CROWN CENTRAL PETROLEUM COR-
PORATION and Crown Central Pipe
Line Company, Relators,

v.

The Honorable Carolyn GARCIA,
Judge, Respondent.

No. 95–0174.

Supreme Court of Texas.

Argued March 23, 1995.

Decided June 29, 1995.

Rehearing Overruled Aug. 1, 1995.

Jack G. Carnegie, James L. Moore and M. Michael Meyer, Houston, for relators.

John E. Williams, Jr., Eric Bogdan, John E. Williams, Jr. and Richard N. Countiss, Houston, for respondent.

HIGHTOWER, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and GONZALEZ, HECHT, CORNYN, ENOCH, SPECTOR and OWEN, Justices, join.

GAMMAGE, Justice, notes his dissent.

In this original proceeding, we consider the propriety of an "apex" deposition, the deposition of a corporate officer at the apex of the corporate hierarchy. Relators Crown Central Petroleum Corporation and Crown Central Pipe Line Company seek a writ of mandamus directing the trial court to vacate its orders of January 18 and 25, 1995 concerning the deposition of Henry Rosenberg, Jr., the chairman of the board and chief executive officer of Crown Central Petroleum Corporation (Crown Central). Today this court adopts guidelines for depositions of persons at the apex of the corporate hierarchy.[1] Because these guidelines had not been adopted prior to the trial court's orders, we deny the writ of mandamus without prejudice so that the trial court may reconsider its ruling in light of today's opinion.[2]

Otto L. Carl, Jr. was employed by Crown Central at its Pasadena refinery for many years. Carl retired in 1981. In 1992, Carl died of lung cancer allegedly as the result of asbestos exposure. In late 1992, Margaret Carl, individually and as representative of the estate of Otto L. Carl, Jr., deceased, Otto L. Carl, III and Margaret E. Nowak (Plaintiffs) sued Crown Central and Crown Central Pipe Line Company for gross negligence. In July 1994, Plaintiffs filed a motion to require Crown Central to produce Rosenberg for a video deposition. The motion also included a subpoena duces tecum for Rosenberg to produce sixteen categories of documents. Crown Central responded with a motion to quash deposition accompanied by Rosenberg's affidavit. Among other things, the affidavit stated: "I have no personal knowledge of Mr. Carl or his job duties, job performance, or any facts concerning alleged exposure to asbestos by Mr. Carl. I was not involved in the day-to-day maintenance decisions made at the Refinery. I have no expertise in industrial hygiene, toxicology, or the health effects of asbestos exposure."[3] Crown Central complained that Plaintiffs had not exhausted less intrusive means of discovery before attempting to depose Rosenberg and that the motion to produce Rosenberg for a video deposition was filed solely for

1. This court has sought to address the propriety of "apex" depositions on several previous occasions, but the cases were mooted by settlement or withdrawal of the notice of deposition. *See State Farm Mutual Auto Ins. Co. v. Hon. Jerry A. Dellana*, No. D–3489, 36 Tex.Sup.Ct.J. 661 (March 24, 1993) (plaintiff withdrew the deposition notice before argument, and the petition was dismissed as moot); *Cessna Aircraft Co. v. Hon. Eugene Chambers*, No. 94–0079, 37 Tex.Sup.Ct.J. 759 (May 11, 1994) (settlement by the parties). *But see Monsanto Co. v. Hon. Robert May*, 889 S.W.2d 274 (Tex.1994) (motion for leave to file petition for writ of mandamus overruled).

2. *See Phoenix Founders, Inc. v. Marshall*, 887 S.W.2d 831 (Tex.1994); *National Tank Co. v. Brotherton*, 851 S.W.2d 193 (Tex.1993).

3. Rosenberg's complete affidavit stated:
My name is Henry A. Rosenberg, Jr. I am over the age of 18 years, of sound mind, have never been convicted of a felony, and am fully competent to make this affidavit.
I have personal knowledge of the facts stated herein and they are true and correct.

I am Chairman of the Board and Chief Executive Officer of Crown Central Petroleum Corporation ("Crown Central"). Crown Central employs approximately three thousand employees; therefore, I do not have personal knowledge of each employee's job duties or performance.
I was a member of the American Petroleum Institute in 1987, which I understand was several years after Otto Carl retired from Crown Central. The letter to Mr. Carl dated June 24, 1980, a copy of which was attached to the Plaintiffs' *Motion to Produce Mr. Henry Rosenberg, Jr. for Video Deposition*, was a form letter sent to all employees who worked during a work stoppage which occurred at Crown Central's Pasadena refinery (the "Refinery"). I have no personal knowledge of Mr. Carl or his job duties, job performance, or any facts concerning alleged exposure to asbestos by Mr. Carl.
I was not involved in the day-to-day maintenance decisions made at the Refinery. I have no expertise in industrial hygiene, toxicology, or the health effects of asbestos exposure.

harassment purposes. Concerning the subpoena duces tecum, Crown Central asserted that Rosenberg was not the custodian of the requested documents and that a substantially identical request was made by the Plaintiffs in a request for production to which Crown Central had responded and filed objections. Neither motion was heard or acted upon. In mid-December 1994, Plaintiffs filed a notice of intention to take the oral deposition of Rosenberg. The notice also included a subpoena duces tecum for Rosenberg to produce thirty-two categories of documents. Crown Central responded with a motion to quash deposition and motion for protective order. Crown Central continued to complain about Rosenberg's lack of personal knowledge, the harassment of Rosenberg and the subpoena duces tecum for Rosenberg to produce thirty-two categories of documents. In late December 1994, Plaintiffs filed their first amended notice of intention to take the oral deposition of Rosenberg which reset the date for Rosenberg's deposition. The notice also included the same subpoena duces tecum concerning production of thirty-two categories of documents. Crown Central again responded with a motion to quash deposition and motion for protective order. Crown Central continued to complain about Rosenberg's lack of personal knowledge, the harassment of Rosenberg and the subpoena duces tecum for Rosenberg to produce thirty-two categories of documents.

On January 18, 1995, after a telephone hearing, the trial court granted Plaintiffs' motion to produce Rosenberg for video deposition and denied Crown Central's motion to quash. The trial court ordered Crown Central to produce Rosenberg for deposition and that Rosenberg produce all documents requested in the subpoena duces tecum.[4] On January 20, 1995, Crown Central filed an emergency motion for reconsideration requesting that the trial court quash the deposition, compel the Plaintiffs to serve Rosenberg with written interrogatories concerning the extent of his knowledge concerning this action which would be answered within five days, limit the duration of Rosenberg's deposition to one hour, reconsider its ruling con-

cerning the production of documents in the subpoena duces tecum, and amend its prior order so that neither Crown Central nor Rosenberg would be required to produce any documents requested in the subpoena duces tecum until after they are afforded a reasonable opportunity to have their objections to the production considered by the court. On January 25, 1995, the trial court denied the emergency motion for reconsideration.

## I.

Crown Central argues that the trial court abused its discretion when it granted Plaintiffs' motion to produce Rosenberg for video deposition and denied Crown Central's motion to quash.

■ It is undisputed that a "party is entitled to discovery that is relevant to the subject matter of the claim, and which appears reasonably calculated to lead to the discovery of admissible evidence." *Monsanto Co. v. May*, 889 S.W.2d 274, 276 (Tex.1994) (Opinion on denial of leave to file petition for writ of mandamus) (Gonzalez, J., joined by Hecht, J., dissenting) (citing Tex.R.Civ.P. 166b(1), (2)(a)). Rule 200 of the Texas Rules of Civil Procedure permits a party to take the deposition of "any person." However, the person noticed for deposition also has the right to protection "from undue burden, unnecessary expense, harassment or annoyance, or invasion of personal, constitutional, or property rights." Tex.R.Civ.P. 166b(5); *Monsanto Co. v. May*, 889 S.W.2d at 276.

Although not previously addressed by this court, the propriety of "apex" depositions—depositions of a corporate officer at the apex of the corporate hierarchy—has been addressed by other courts. *See Liberty Mutual Ins. Co. v. Superior Court of San Mateo County*, 10 Cal.App.4th 1282, 13 Cal.Rptr.2d 363 (1992); *Broadband Communications Inc. v. Home Box Office, Inc.*, 157 A.D.2d 479, 549 N.Y.S.2d 402 (1990); *Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir.1979); *Baine v. General Motors Corp.*, 141 F.R.D. 332 (M.D.Ala.1991); *Travelers Rental Co., Inc. v. Ford Motor Co.*, 116 F.R.D. 140 (D.Mass.

---

4. Apparently, the trial court did not consider Crown Central's objections to production of the documents described in the subpoena duces tecum.

1987); *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364 (D.R.I.1985); *Mitchell v. American Tobacco Co.*, 33 F.R.D. 262 (M.D.Pa.1963); *Armstrong Cork Co. v. Niagara Mohawk Power Corp.*, 16 F.R.D. 389 (S.D.N.Y.1954); *M.A. Porazzi Co. v. The Mormaclark*, 16 F.R.D. 383 (S.D.N.Y.1951).

*Liberty Mutual Ins. Co. v. Superior Court of San Mateo County* is particularly instructive. In *Liberty Mutual Ins. Co.*, the court held:

> that when a plaintiff seeks to depose a corporate president or other official at the highest level of corporate management, and that official moves for a protective order to prohibit the deposition, the trial court should first determine whether the plaintiff has shown good cause that the official has unique or superior personal knowledge of discoverable information. If not, as will presumably often be the case in the instance of a large national or international corporation, the trial court should issue the protective order and first require the plaintiff to obtain the necessary discovery through less-intrusive methods. These would include interrogatories directed to the high-level official to explore the state of his or her knowledge or involvement in plaintiff's case; the deposition of lower-level employees with appropriate knowledge and involvement in the subject matter of the litigation; and the organizational deposition of the corporation itself, which will require the corporation to produce for deposition the most qualified officer or employee to testify on its behalf as the specified matters to be raised at the deposition. Should these avenues be exhausted, and the plaintiff make a colorable showing of good cause that the high-level official possesses necessary information to the case, the trial court may then lift the protective order and allow the deposition to proceed.

13 Cal.Rptr.2d at 367 (citation omitted).

## II.

■ As virtually every court which has addressed the subject has observed, depositions of persons in the upper level management of corporations often involved in lawsuits present problems which should reasonably be accommodated in the discovery process. From the decisions of these other courts, we distill the following guidelines for addressing the problems.

■ When a party seeks to depose a corporate president or other high level corporate official and that official (or the corporation) files a motion for protective order to prohibit the deposition accompanied by the official's affidavit denying any knowledge of relevant facts, the trial court should first determine whether the party seeking the deposition has arguably shown that the official has any unique or superior personal knowledge of discoverable information. If the party seeking the deposition cannot show that the official has any unique or superior personal knowledge of discoverable information, the trial court should grant the motion for protective order and first require the party seeking the deposition to attempt to obtain the discovery through less intrusive methods. Depending upon the circumstances of the particular case, these methods could include the depositions of lower level employees, the deposition of the corporation itself, and interrogatories and requests for production of documents directed to the corporation. After making a good faith effort to obtain the discovery through less intrusive methods, the party seeking the deposition may attempt to show (1) that there is a reasonable indication that the official's deposition is calculated to lead to the discovery of admissible evidence, and (2) that the less intrusive methods of discovery are unsatisfactory, insufficient or inadequate. If the party seeking the deposition makes this showing, the trial court should modify or vacate the protective order as appropriate. As with any deponent, the trial court retains discretion to restrict the duration, scope and location of the deposition. If the party seeking the deposition fails to make this showing, the trial court should leave the protective order in place.

Because these guidelines had not been adopted prior to the trial court's orders, we deny the writ of mandamus without prejudice so that the trial court may reconsider its order denying Crown Central's motion to quash Rosenberg's deposition. The stay order previously issued by this court remains

in effect only so long as necessary to allow the trial court to act.