Melvin SIMON and Herbert
Simon, Relators,

v.

Honorable Wayne BRIDEWELL, Judge,
249th Judicial District Court, Johnson
County, Texas, Respondent.

No. 10–97–213–CV.

Court of Appeals of Texas,
Waco.

Aug. 6, 1997.

Scott Patrick Stolley, John A. Mackintosh & Rachelle H. Glazer, Thompson & Knight, P.C., Dallas, Angus E. McSwain, Fulbright, Winniford, Bice & Marable, P.C. Waco, for Relators.

Kathryn J. Gilliam, Waco, John Holman Barr, M. Forrest Nelson & John Howell House, Burt Barr & Associates, L.L.P., Dallas, John R. MacLean, Dan Boulware & Sydney Hewlett, MacLean & Boulware, Cleburne, for Real Parties in Interest.

Dennis W. Bridewell, Cleburne, pro se.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## MEMORANDUM OPINION

PER CURIAM.

Relators Melvin Simon and Herbert Simon filed a motion seeking leave to file a petition for writ of mandamus against Respondent, the Honorable Wayne Bridewell, Judge of the 249th Judicial District Court, Johnson County. Cynthia Joy Bacon ("Bacon"), individually, as personal representative of the Estate of Kevin Reuss Bacon, and as next friend of Amber Gayle Bacon and Robyn Nicole Bacon, minors, is the real party in interest. Relators seek a writ of mandamus to require Judge Bridewell to vacate his order of May 30, 1997, denying Relators' motion for a protective order from notices of deposition served on them by Bacon.

On July 18, we granted Relators' motion for leave to file the petition for mandamus relief. After having considered Relators' petition, Bacon's reply, the exhibits, and arguments of counsel, we will deny the petition.

## FACTUAL BACKGROUND

Bacon filed suit against Relators Melvin and Herbert Simon and others. The factual basis of Bacon's suit stems from the fatal shooting of her husband Kevin in the food court of the Irving Mall on December 27, 1993. Relators were general partners of Irving Mall Development Company, L.P (the "Irving partnership"), a Texas limited partnership. They collectively owned a 73.99 percent interest in the Irving partnership.

The two other general partners of the Irving partnership, Irving Mall, Inc., and M.S.A. § Shopping Malls, Inc. ("MSA"), collectively owned a 1.1 percent interest in the partnership. Irving Mall, Inc., was a wholly-owned subsidiary of MSA. M.S.A. § is a closely-held corporation with Relators each owning a fifty percent interest in the corporation.

Bacon sued Relators and the Irving partnership for negligence, gross negligence, DTPA violations, and breach of contract. The suit alleges that the Irving partnership owned and managed the Irving Mall at the time of the shooting and that Relators were then general partners of the Irving partnership. Bacon also alleges that the Irving partnership provided security for the mall at the time of the shooting. Bacon began pre-trial discovery by serving Relators and the Irving partnership on August 29, 1995, with interrogatories, requests for admission, and requests for production. Relators filed their initial objections and responses to these discovery requests on December 1. Bacon continued to conduct discovery for over a year. She considered Relators' responses to her discovery inadequate. Thus, she noticed Relators for oral depositions on April 14, 1997.

Relators filed a motion to quash their depositions on the same day,[1] alleging that

---

1. Bacon had notified counsel for Relators by letter dated March 24, 1997, that she intended to depose them and sought mutually agreeable times to conduct the depositions. Relators apparently filed their motion in anticipation of Bacon's deposition notices.

Bacon sought them solely for purposes of harassment and that the information Bacon sought could be obtained "from other readily available sources who have closer contact and more personal knowledge of any subject matters that could be relevant to this litigation." Judge Bridewell set the matter for hearing on May 30.

Relators filed a supplemental motion for protection on May 23, which asserts that because they are co-chairs of the board of directors of Simon DeBartolo Group, Inc.[2] the depositions sought by Bacon "are necessarily 'apex' depositions. . . ." *See Crown Cent. Petroleum Corp. v. Garcia,* 904 S.W.2d 125, 128 (Tex.1995). Relators also argued in the motion that the "apex" deposition doctrine applies "[b]ecause of the relative positions that they held in their respective companies in 1993 and the comparable positions that they hold today. . . ."

According to Relators' mandamus petition the Irving partnership owned Irving Mall until December 20, 1993, seven days before the fatal shooting. Relators allege that on that date they and their other partners transferred their respective interests in the Irving partnership to a newlyformed entity known as Simon Property Group, L.P ("SPGLP").[3] SPGLP in turn transferred ownership of the mall to Simon Property Group (Texas), L.P., a Texas limited partnership (the "Texas partnership"). Relators allege that the Irving partnership dissolved in December 1994 by the filing of a certificate of cancellation of the certificate of limited partnership with the office of the Secretary of State.[4] *See* TEX.REV.CIV. STAT. ANN. art. 6132a–1, § 2.03(a) (Vernon Supp.1997).

Golden Ring Mall Company, L.P. ("Golden Ring"), is the sole general partner of the Texas partnership. Simon Property Group (Delaware), Inc. ("SPG Delaware"), is the sole general partner of Golden Ring. Relators are co-chairmen of the board of SPG Delaware. SPGLP is the sole limited partner of Golden Ring. Bacon has named SPGLP, the Texas partnership, Golden Ring, and SPG Delaware as defendants in her suit.

Bacon asserts that the Irving partnership continued to exercise ownership and management responsibilities over the mall after December 20, 1993. As evidence she cites a lease amendment between the Irving partnership and Frozen Fox, Inc. dated August 4, 1994. However, because Bacon did not offer this document in evidence at the hearing, Relators have filed a motion to strike or disregard it. We may not consider evidence which the proponent did not present to the trial court.[5] *Sabine Offshore Serv., Inc. v. City of Port Arthur,* 595 S.W.2d 840, 841 (Tex.1979); *Intercity Management Corp. v. Chambers,* 820 S.W.2d 811, 813 n. 4 (Tex. App.—Houston [1st Dist.] 1991, orig. proceeding). Thus, we grant Relators' motion to strike.

Bacon also contends that regardless of the ownership of the mall, the Irving partnership continued to provide security for the mall after December 20, 1993. Relators claim that "[t]he responsibility for security at [the] mall rests with the mall manager and the director of security at the . . . mall[ ]." They allege that after December 20, 1993, SPG Texas owned and managed the mall and thus was responsible for mall security.

At the hearing, Bacon introduced an April 1994 request by the Irving partnership to renew its security license with the Texas Board of Private Investigators and Private Security Agencies. Bacon also introduced a certificate of license issued by the Board to the Irving partnership on March 1, 1996. This certificate renewed the partnership's se-

---

2. Simon DeBartolo Group, Inc. is not a party to Bacon's suit.

3. In 1993, Relators were limited partners of SPGLP. They exchanged their interests in SPGLP in August 1996 for similar interests in another limited partnership known as Simon De-Bartolo Group, L.P.

4. Relators did not offer a copy of the certificate of cancellation in evidence at the hearing.

5. At the hearing on Relators' motion for protection, Bacon sought to introduce over twenty lease agreements signed by Herbert Simon as president of Irving Mall, Inc. and various tenants of the mall. These lease agreements were all apparently signed by the respective parties between 1990 and 1993. Relators stipulated that Herbert Simon signed all these leases in his capacity as president of Irving Mall, Inc.

curity license through February 28, 1997. In addition, Bacon offered a July 1993 lease signed by Relator Herbert Simon as president of Irving Mall, Inc. with La Fata, Inc. The lease expressly provides that the Irving partnership "will operate, manage, [and] maintain ... the Common Area of the [mall]." Among other things, the partnership agreed in the lease to provide "police protection [and] security and security patrol" for the common area.

The security license constitutes some evidence that the Irving partnership continued to exist after December 23, 1994, the date on which Relators allege it dissolved.[6] It also is evidence that the partnership continued to provide security for the mall after the alleged date of dissolution. Thus, Bacon produced some evidence that the Irving partnership was responsible for mall security on the date of the fatal shooting.

At the hearing on Relators' motion, the court reviewed the pleadings, accepted documentary evidence, and heard argument of counsel before ruling. The court denied Relators' request to quash the deposition notices.

■ The relator in a mandamus proceeding bears the burden of showing it has no adequate remedy by appeal and that the court abused its discretion in taking the action of which the relator complains. *Canadian Helicopters Ltd. v. Wittig,* 876 S.W.2d 304, 305 (Tex.1994). With respect to disputed factual issues, we may not substitute our judgment for the trial court's. *Easter v. McDonald,* 903 S.W.2d 887, 889–90 (Tex. App.—Waco 1995, orig. proceeding). Relators "must establish that the trial court could reasonably have reached only one decision." *Id.* at 890.

## THE "APEX" DEPOSITION DOCTRINE

■ Our Supreme Court adopted the "apex" deposition doctrine in 1995. *Crown Cent. Petroleum,* 904 S.W.2d at 126. The

doctrine applies in suits where "a party seeks to depose a corporate president or other high level corporate official...." *Id.* at 128. The "apex" doctrine is invoked when the corporate official files a motion for protection accompanied by an "affidavit denying any knowledge of relevant facts...." *Id.* The burden of persuasion then shifts to the party seeking the deposition to show that the official possesses some pertinent personal knowledge of relevant facts. *Id.* If the party seeking discovery does not make this showing, the court should grant the motion "and first require the party seeking the deposition to attempt to obtain the discovery through less intrusive methods." *Id.*

■ From the record before us, we conclude that the "apex" doctrine does not apply to this case for a number of reasons.

### THE CORPORATE OFFICIAL'S "APEX" STATUS MUST BE RELEVANT TO THE DEPOSITION

■ A corporate officer is not exempt from deposition by the "apex" doctrine merely because he is a corporate official. Rather, the doctrine may be invoked only when the deponent has been noticed for deposition because of his corporate position. For example, if the president of a Fortune 500 corporation personally witnesses a fatal car accident, he cannot avoid a deposition sought in connection with a resulting wrongful death action because of his "apex" status. Thus, Relators' positions with Simon DeBartolo Group, Inc. have no bearing on their amenability to deposition because that corporation had no ownership interest in the mall at the time of the shooting.

### THE "APEX" DOCTRINE IS UNAVAILABLE IF LESS INTRUSIVE MEANS OF DISCOVERY HAVE ALREADY BEEN EMPLOYED

Bacon attempted to conduct discovery for over eighteen months by means of interrogatories, requests for production, and requests

---

6. The date of the filing of a certificate of cancellation does not necessarily equate to the date of dissolution of a limited partnership. According to section 2.03(b)(4) of the Texas Revised Limited Partnership Act, a limited partnership can designate a future effective date of dissolution in a certificate of cancellation. TEX.REV.CIV. STAT. ANN. art. 6132a–1, § 2.03(b)(4) (Vernon Supp.1997). Because Relators have not provided a copy of the certificate of cancellation, we cannot say whether the certificate of cancellation was effective on the date it was filed or on some future date.

for admission before noticing Relators for oral depositions. Although Relators filed numerous objections to these discovery requests, they did not object to them on the basis of their "apex" status, and they attempted to answer many of the discovery requests subject to their stated objections.[7]

■ Ordinarily, once a court grants an "apex" protective order, the party seeking discovery can return to the court after attempting other avenues of discovery and seek to have the order overturned.

> After making a good faith effort to obtain the discovery through less intrusive methods, the party seeking the deposition may attempt to show (1) that there is a reasonable indication that the official's deposition is calculated to lead to the discovery of admissible evidence, and (2) that the less intrusive methods of discovery are unsatisfactory, insufficient or inadequate. If the party seeking the deposition makes this showing, the trial court should modify or vacate the protective order as appropriate.

*Id.*

■ In this case, the record suggests that Bacon attempted less intrusive means of discovery prior to seeking Relators' depositions. Judicial economy is not served by granting a protective order where the record affirmatively reflects that the party seeking discovery has already exhausted other avenues for conducting discovery. Thus, we conclude that an "apex" official cannot find safe harbor in the "apex" doctrine when the record shows that the party seeking the deposition has previously attempted less intrusive means of discovery. *Cf. id.*

### APPLICABILITY OF THE "APEX" DOCTRINE TO PARTNERSHIPS

Relators filed affidavits denying personal knowledge with their motion for protection. However, by introducing evidence of the continued existence of the Irving partnership at least for security purposes, Bacon has raised a potential fact issue with respect to what organization was truly responsible for

security at the mall on the date of the fatal shooting. If the Irving partnership was responsible for security, as Bacon's evidence suggests, then it might be liable to Bacon under one or more of the theories asserted in her suit.

Relators essentially controlled over 75 percent of the Irving partnership as general partners. Relators' evidence suggests that the partnership continued its existence for at least twelve months after the fatal shooting. The records of the Texas Board of Private Investigators and Private Security Agencies reflect that the partnership renewed its security license after the shooting and continued to possess the license through February 1997.

■ As general partners, Relators are liable for the obligations of the Irving partnership. TEX.REV.CIV. STAT. ANN. art. 6132a–1, § 4.03 (Vernon Supp.1997); *Shaw v. Kennedy, Ltd.,* 879 S.W.2d 240, 247 (Tex.App.—Amarillo 1994, no writ). The general partners of that partnership are likewise subject to deposition in legal actions involving the partnership. *See, e.g., Kelly Assoc., Ltd. v. Aetna Casualty & Sur. Co.,* 681 S.W.2d 593, 595 (Tex.1984).

Relators have cited no cases where the "apex" doctrine has been extended to general partners in a limited partnership. Although we do not preclude the possibility that the doctrine might be so extended under appropriate facts, the facts presented in this case do not warrant such an extension.

### THE "APEX" DOCTRINE DOES NOT PROTECT NAMED PARTIES

Moreover, Relators are named parties to Bacon's suit. Rule 200 of the Rules of Civil Procedure provides that "any party may take the testimony of any person, including a party, by deposition upon oral examination." TEX.R. CIV. P. 200. Thus, because Relators are defendants in this lawsuit, Bacon may depose them.

---

7. Relators commonly objected to the propounded interrogatories on the basis that they were "overbroad, unduly burdensome, unnecessarily expensive and meant solely for the purpose of harassment."

444

## CONCLUSION

Relators have failed to show that the court abused its discretion in denying their motion for protective order. They have not demonstrated that "the trial court could reasonably have reached only one decision." *Easter*, 903 S.W.2d at 890. Thus, we deny the petition.