COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-400-CV
 
IN RE
THE BURLINGTON NORTHERN
AND SANTA FE RAILWAY
COMPANY
 
------------
ORIGINAL PROCEEDING
------------
OPINION
------------
I. Introduction
On November 26, 2002, relator
Burlington Northern and Santa Fe Railway Company (BNSF) filed a petition for
writ of mandamus from the trial court's order denying its motion for protective
order and motion to quash the deposition of its president and CEO, Matthew K.
Rose. We conditionally grant the writ.
II. Factual
Background
This case arises out of a railroad
crossing accident between a Union Pacific train and a van driven by James
Anthony Phillips. BNSF owns the tracks at the crossing where the accident
occurred. As a result of the accident, real parties in interest Cindy McGinnis,
Individually and as Next Friend for James Anthony Phillips, Stephanie A.
Phillips and James M. Phillips, sued both BNSF and Union Pacific.
On August 28, 2002, real parties
noticed Rose's deposition for October 21, 2002.(1) 
BNSF filed a motion for protective order and motion to quash Rose's deposition,
along with Rose's affidavit, which stated, among other things, that he had no
specific or superior knowledge with regard to the crossing at issue in the suit
or with regard to any other aspect of the case. Real parties in interest filed a
response to the motion, and BNSF filed a reply.
On October 18, 2002, the trial
court issued a letter ruling, directing real parties to prepare an order denying
BNSF's motion.(2)  On November 19, 2002,
BNSF obtained a written order denying its motion for protective order and motion
to quash Rose's deposition. Rose's deposition did not go forward in October as
originally scheduled, but was renoticed for December 9. The amended notice was
issued before the trial court's November 18 order. BNSF filed its petition for
writ of mandamus on November 26, 2002, challenging only the denial of the motion
to quash Rose's deposition. It later filed a motion for temporary relief on
December 23, 2002, requesting that this court stay Rose's deposition, now
scheduled for January 6, 2003, pending final resolution of this proceeding. The
motion was granted.
III. The Apex
Deposition
Real parties do not dispute that
Rose's deposition would be an apex-level deposition. See Crown Cent.
Petroleum Corp. v. Garcia, 904 S.W.2d 125, 128 (Tex. 1995) (holding apex
deposition guidelines apply "[w]hen a party seeks to depose a corporate
president or other high level corporate official"). The issue is whether
real parties satisfied the apex deposition guidelines established by the Texas
Supreme Court. Specifically, BNSF argues real parties failed to show that: (1)
Rose has unique or superior knowledge of discoverable information; or (2) Rose
has information that cannot be obtained through less intrusive means. Thus,
according to BNSF, the trial court abused its discretion in denying its motion
for protective order and motion to quash Rose's deposition.
In deciding whether a writ of
mandamus is appropriate, we recognize that mandamus will issue only to correct a
clear abuse of discretion or the violation of a duty imposed by law when there
is no other adequate remedy at law. In re Daisy Mfg. Co., 17 S.W.3d
654, 658 (Tex. 2000) (orig. proceeding); In re Alcatel USA, Inc., 11
S.W.3d 173, 175 (Tex. 2000) (orig. proceeding). A trial court clearly abuses its
discretion when it reaches a decision so arbitrary and unreasonable as to amount
to a clear and prejudicial error of law. Walker v. Packer, 827 S.W.2d
833, 839 (Tex. 1992) (orig. proceeding).
Under Crown Central, a
party seeking to prevent the deposition of an apex-level witness must move for
protection and must file the corporate official's affidavit denying any
knowledge of relevant facts. 904 S.W.2d at 128; see also Alcatel, 11
S.W.3d at 175-76. The trial court must then evaluate the motion and decide if
the party seeking the deposition has "arguably shown that the official has
any unique or superior personal knowledge of discoverable information." Crown
Cent., 904 S.W.2d at 128. "If the party seeking the deposition cannot
show that the official has any unique or superior personal knowledge of
discoverable information, the trial court should" not allow the deposition
to go forward without a showing, after a good faith effort to obtain the
discovery through less intrusive means, "(1) that there is a reasonable
indication that the official's deposition is calculated to lead to the discovery
of admissible evidence, and (2) that the less intrusive methods of discovery are
unsatisfactory, insufficient or inadequate." Id.; see also Alcatel,
11 S.W.3d at 175-76.
BNSF properly initiated the apex
guideline proceedings set forth in Crown Central by moving for
protection and filing Rose's affidavit denying any knowledge of relevant facts.(3)
See Crown Cent., 904 S.W.2d at 128; see also Alcatel, 11
S.W.3d at 175; AMR Corp. v. Enlow, 926 S.W.2d 640, 643 (Tex. App.--Fort
Worth 1996, orig. proceeding). Thus, the burden shifted to real parties to show
that Rose had unique or superior personal knowledge of discoverable information.
See Alcatel, 11 S.W.3d at 175-76; AMR Corp., 926 S.W.2d at
643.
In response to BNSF's motion for
protective order and motion to quash, real parties stated that the deposition of
Tim Huya, a BNSF employee, showed Rose was directly involved in the decision
relating to the timing of crossing upgrades. In support of their contention,
real parties attached excerpts of Huya's deposition testimony to its response.
The deposition showed that an April 2000 meeting or work session between BNSF
and the Texas Department of Transportation took place for purposes of discussing
a process for reducing the time frame for installing crossings in Texas, which
would result in a reduction from a twenty-six month to a thirteen-month
installation process after April 2000. The only reference to Rose in this
meeting was Huya's statement that "our president of our corporation at the
time advised us that we should look at even more refining, refining the timeline
to even shorter," effective as of January 1, 2001. Huya then testified that
they "came out of that working session with a second option of a
seven-month install." Huya also testified as to his understanding of why
Rose wanted to reduce the install time:

 Part of our vision statement on
 BNSF is to be a leader in the transportation industry and a leader in safety.
 One of those aspects is getting crossings in as quickly as possible,
 completing tasks as quickly as possible to lead the industry, to show others,
 to say, "BNSF can do it quicker, better, faster than everybody
 else."

Huya testified that the vision
statement was also in a printed document.
This testimony shows only that Rose
wanted BNSF to look at shorter time frames for installing crossings. There is no
evidence that Rose was either present at the meeting or that he had any
specialized knowledge about the details discussed at that meeting. Huya's
understanding that the company's vision statement provided the basis for Rose's
suggestion of looking at a shorter time frame does not show that Rose had any
specialized or superior knowledge with regard to crossings. The evidence relied
upon by real parties is too general to show Rose's knowledge is unique or
superior with respect to either crossings in general or the crossing in this
case. See Alcatel, 11 S.W.3d at 177. Testimony that a corporate
executive possesses knowledge of company policies does not, by itself, satisfy
the first Crown Central test because it does not show that the
executive has unique or superior knowledge of discoverable information. Id.
Real parties also did not show in
their response to the petition for writ of mandamus that Rose has unique or
superior personal knowledge of discoverable information. Instead, real parties
tried to shift the burden, stating the petition should be denied because BNSF
failed to deny that Rose had unique or superior knowledge of the "upgrade
process for installing active warning devices." This burden, however, falls
on real parties, and they have failed to meet it. See id. at 175-76.
The evidence presented by real
parties to the trial court and to this court does not show anything beyond mere
relevance. Id. at 179. To be unique or superior, "there must be
some showing beyond mere relevance, such as evidence that a high-level executive
is the only person with personal knowledge of the information sought or
that the executive arguably possesses relevant knowledge greater in quality or
quantity than other available sources." Id. (emphasis added). Real
parties presented no evidence here or in the trial court that comes close to
showing Rose meets either criteria.
Having failed to show that Rose had
unique or superior knowledge, real parties were required to make a good faith
effort to obtain the discovery through less intrusive means. See id. at
175-76; AMR Corp., 926 S.W.2d at 644. Real parties did not demonstrate
or allege that they made a good faith effort to obtain the discovery through
less intrusive means. See AMR Corp., 926 S.W.2d at 644. Thus, based on
BNSF's motion for protective order, Rose's affidavit, and real parties' failure
to follow the Crown Central guidelines for obtaining Rose's deposition,
we hold the trial court abused its discretion in denying BNSF's motion for
protection order and motion to quash Rose's deposition.
IV. Conclusion
Because the trial court abused its
discretion in denying BNSF's motion for protective order and motion to quash
Rose's deposition, we conditionally grant BNSF's petition for writ of mandamus.
We are confident the trial court will vacate its order in accordance with this
opinion. We instruct our clerk to issue the writ only if the trial court fails
to comply with this opinion.
 
                                                                               
SAM J. DAY
                                                                               
JUSTICE
 
PANEL A: DAY, LIVINGSTON, and
DAUPHINOT, JJ.
[DELIVERED FEBRUARY 7, 2003]

1. Real parties also noticed the depositions of several
other BNSF representatives, but these notices are not at issue in this
proceeding.
2. BNSF subsequently filed a petition for writ of mandamus
with this court, challenging the trial court's order denying the motion for
protective order as to all the notices of deposition. This court denied the
petition and subsequent motion for rehearing.
3. In response to the petition for writ of mandamus, real
parties argue that the petition should be denied because Rose did not
specifically state in his affidavit that he did not have "any knowledge of
relevant facts." First, there is no requirement that a party must recite
the specific language of Crown Central in an affidavit in order to show
that the affiant has no knowledge of relevant facts. Further, Rose's affidavit
stated in numerous places that he had no knowledge of the facts of the lawsuit.
Specifically, Rose stated in his affidavit that he has "no unique or
superior knowledge or information regarding any aspect of this case" and
that he has "no personal knowledge of the condition of this crossing at the
time of the accident made the basis of this suit." We believe this language
complies with Crown Central.