

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00126-CV

**IN RE NEWPORT CLASSIC HOMES, L.P. L.L.C.**

Original Mandamus Proceeding[1]

**OPINION ON MOTION FOR EN BANC RECONSIDERATION**

Opinion by:     Marialyn Barnard, Justice
Dissenting Opinion by: Irene Rios, Justice, joined by Rebeca C. Martinez, Justice

Sitting en banc:[2]     Sandee Bryan Marion, Chief Justice
                        Karen Angelini, Justice
                        Marialyn Barnard, Justice
                        Rebeca C. Martinez, Justice
                        Irene Rios, Justice

Delivered and Filed:  October 10, 2018

RELATOR'S MOTION FOR EN BANC RECONSIDERATION GRANTED; PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED

On May 2, 2018, with one justice dissenting, a panel of this court denied relator Newport Classic Homes, L.P., L.L.C.'s ("Newport") petition for writ of mandamus. Newport timely filed a motion for reconsideration, which was denied, with one justice dissenting to the denial without requesting a response. Thereafter, Newport timely filed its motion for en banc reconsideration. The en banc court, with two justices dissenting and two justices not participating, requested a response from Rafael Lagunes, the real party in interest. After reviewing the motion and response,

---

[1] This proceeding arises out of Cause No. 2014-CI-02113, styled *Rafael Lagunes v. Newport Classic Homes, L.P., L.L.C.*, pending in the 57th Judicial District Court, Bexar County, Texas, the Honorable Rosie Alvarado presiding.
[2] Justice Patricia O. Alvarez and Justice Luz Elena D. Chapa are not participating.

a majority of the en banc court — again with two justices dissenting and two justices not participating, granted Newport's motion for en banc reconsideration.[3]

After reconsideration, we withdraw our May 2, 2018 opinion and order and substitute this opinion and order in their stead. Because the trial court erred by ordering the apex deposition of Marcus Hiles — chief executive officer, president, and owner of Newport, and there is no adequate remedy by appeal, we conditionally grant Newport's petition for writ of mandamus and order the trial court to vacate the order granting the motion to compel Hiles's deposition.

## BACKGROUND

Newport is the general contractor on a large construction project. Western Rim Properties owns the project. Hiles is the chief executive officer, president, and owner of Newport and Western Rim. Real party in interest and plaintiff below, Rafael Lagunes, was employed by Associated Interiors, Inc., a subcontractor that performed drywall work on the project. Lagunes was injured in a workplace accident and brought suit against Newport and others, asserting claims for negligence and gross negligence. In his petition, Lagunes alleged Newport had contractual and actual control of the construction site and job. Lagunes sought to depose Hiles, but Newport moved to quash the deposition. In an affidavit in opposition to the deposition, Hiles averred he did "not have any unique or superior knowledge of any facts and/or evidence surrounding the construction project and/or incident involving Lagunes." Hiles claimed the only information he had would have been received from corporate representative Eric Robinson, who is a Newport's vice president of construction. Lagunes filed a motion to compel Hiles's deposition.

After a hearing, the trial court signed an order granting Lagunes's motion to compel Hiles's deposition, listing the following topics as subjects for the deposition:

---

[3] We disagree with the dissent's contention that en banc reconsideration is improper. Contrary to the dissent's contention, we hold a denial of mandamus relief in this case would conflict with our prior decision in *In re Semgroup.*

a. Jobsite safety regarding Fall Protection
b. Subcontracts with Parties: Bid process, change orders, violations or breach by subcontractors, duties and responsibilities under the contracts for safety
c. Contract with Owner, Western Rim, if any
d. [Plaintiffs'] incident of October 1, 2013
e. Marcus Hiles's Site visits

Newport filed a motion to reconsider the trial court's order, but the motion was denied. Subsequently, the trial court granted Lagunes's motion to enforce, ordering the parties to agree to a deposition date within fourteen days of the date of the order. Newport then filed a petition for writ of mandamus in this court, challenging the trial court's order granting the motion to compel. Lagunes filed a response.

## ANALYSIS

In its petition, Newport contends the trial court clearly abused its discretion in compelling Hiles's deposition. Newport argues Lagunes failed to meet the requirements that would permit the taking of an apex deposition under the requirements set out by the Texas Supreme Court in *Crown Central Petroleum Corp. v. Garcia*, 904 S.W.2d 125 (Tex. 1994) (orig. proceeding). Newport further asserts it has no adequate remedy by appeal.

### *Standard of Review*

"Mandamus relief is available only to correct a 'clear abuse of discretion' when there is no other adequate remedy at law." *In re Alcatel USA, Inc.*, 11 S.W.3d 173, 175 (Tex. 2000) (orig. proceeding); *see In re M-I, L.L.C.*, 505 S.W.3d 569, 574 (Tex. 2016) (orig. proceeding). A trial court clearly abuses its discretion when its decision is "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *M-I, L.L.C.*, 505 S.W.3d at 574 (quoting *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding)). If the trial court fails to analyze or apply the law correctly, it has clearly abused its discretion. *Id.* With regard to the absence of an adequate remedy by appeal, "a party will not have an adequate remedy by appeal when the appellate court

would not be able to cure the trial court's discovery error." *In re Christus Santa Rosa Health Sys.*, 492 S.W.3d 276, 279 (Tex. 2016) (orig. proceeding) (quoting *Walker*, 827 S.W.2d at 843).

With regard to apex depositions, the supreme court has specifically held that a party may seek mandamus relief to determine whether the trial court correctly ordered an apex deposition. *Alcatel USA, Inc.*, 11 S.W.3d at 180 (mandamus relief appropriate when trial court abused its discretion by denying motion to quash apex depositions); *see also In re Semgroup Corp.*, No. 04-16-00230-CV, 2016 WL 3085875, at *1 (Tex. App.—San Antonio June 1, 2016, orig. proceeding) (mem. op.) (granting mandamus relief because real parties in interest did not meet requirements necessary to justify apex depositions). Thus, mandamus is the appropriate vehicle to challenge the trial court's order mandating that Hiles submit to Lagunes's deposition notice. *See Alcatel USA, Inc.*, 11 S.W.3d at 180; *Semgroup Corp.*, 2016 WL 3085875, at *1.

### *Procedural Objection to Application of Crown Central Test*

As a preliminary matter, Lagunes contends the petition for writ of mandamus should be denied because Newport failed to file a motion for a protective order. According to Lagunes, this failure relieved him of any obligation to satisfy the requirements set out in the *Crown Central* test, which sets the requirements for the taking of apex depositions, i.e., depositions of persons in upper level management of corporations.[4] *See Crown Cent. Petroleum Corp. v. Garcia*, 904 S.W.2d 124 (Tex. 1995). We disagree.

Although the mandates of *Crown Central* are activated by moving for protection and filing the corporate official's affidavit denying any knowledge of relevant facts, we have found no

---

[4] Lagunes also contends "there is no mandamus record on file with this Court," and therefore, the petition should be denied. Contrary to Lagunes's contention, Newport attached an appendix to its petition and filed a separate mandamus record. *See* TEX. R. APP. P. 52.3(k); *id.* R. 52.7. Whether the record is sufficient to support mandamus relief is a separate question, but Newport provided this court with the required appendix and record. *See id.* R. 52.3(k); *id.* R. 52.7. Thus, we hold this is an invalid basis for denial of Newport's petition.

authority, nor has Lagunes cited any, holding that a motion for protective order is a mandatory prerequisite. *See Alcatel USA, Inc.*, 11 S.W.3d at 175; *Semgroup Corp.*, 2016 WL 3085875, at *1. Rather, *Alcatel USA, Inc.* requires only that the party resisting the apex deposition file a motion to quash or otherwise seek to prohibit the deposition. *Alcatel USA, Inc.*, 11 S.W.3d at 175. A review of *Alcatel USA, Inc.* shows the most important aspect in resisting an apex deposition is the filing of the corporate representative's affidavit denying any knowledge of relevant facts. *Id.* at 175–76. Here, Newport "moved for protection" by filing a response to Lagunes's motion to compel the deposition in which Newport argued Hiles lacked unique or superior knowledge of discoverable information. Hiles's affidavit was attached to the response and states:

> I am the CEO of NEWPORT CLASSIC HOMES, LP. I do not have any unique or superior knowledge of any facts and/or evidence surrounding the construction project and/or incident involving [Lagunes]. All of the information I have in regard to the construction project and/or subject incident involving [Lagunes] is information I gathered only from Mr. Robinson's responsibilities on the subject project [sic] were to establish proper policies and procedures for the subject project, including hiring and staffing the project and training those individuals.

> In my role as CEO, I make occasional site visits. I did not personally interview any persons regarding the incident nor visit the location of the incident. Any information I learned regarding the incident would have been from Mr. Eric Robinson as part of normal management reporting and I have no other information.

> Additionally, [Lagunes's] counsel has secured the deposition of the Corporate Representative of Newport Classic Homes, who was Eric Robinson, taken on October 15, 2015. [Lagunes's] counsel examined Mr. Robinson for 113 pages in regards to policies, procedures, training, supervision and details regarding the subject incident. Not once did Mr. Robinson defer to Mr. Hiles or suggest that Mr. Hiles had additional, unique, and/or superior knowledge and/or information regarding [the] construction project and/or subject incident involving Lagunes.

At the hearing on Lagunes's motion to compel, Newport's attorney argued:

> Also, Judge, again they only filed a motion to compel a witness deposition. There was no depo notice, so we did not file a motion to quash or a motion for protective order. We did file a response, but if the Court takes issue with that, we would ask for leave to be able to change the title of our motion to a motion for protection.

Based on the foregoing, we conclude Newport's motion resisting Lagunes's motion to compel — to which Newport attached Hiles's affidavit — was sufficient to trigger application of *Crown Central*; a specific motion for protective order was not required.

Lagunes also contends the *Crown Central* guidelines were not implicated because Newport's response and Hiles's affidavit were untimely as they were not filed until the day before the hearing on his motion to compel. Lagunes argues that because parties resisting discovery are required to file any supporting affidavits at least seven days before the hearing, Newport's late-filed affidavit was not before the trial court. *See* TEX. R. CIV. P. 199.6. Again, we disagree.

Texas Rule of Civil Procedure 199.6 governs objections to oral depositions and provides in pertinent part: "The party seeking to avoid discovery must present any evidence necessary to support the objection or privilege either by testimony at the hearing or by affidavits served on opposing parties at least seven days before the hearing." *Id.* Here, Lagunes filed his motion to compel on January 18, 2018. Relator filed a response with the Hiles affidavit on January 23rd. Six days after Lagunes filed his motion to compel, the trial court conducted a hearing on the motion.

At the hearing on Lagunes's motion to compel, Lagunes's counsel objected, arguing Newport did not file a motion for protective order and did not file the Hiles affidavit seven days before the hearing. He pointed out Newport did not seek a motion for leave to file the Hiles affidavit outside the seven-day period set out in Rule 199.6. However, Lagunes's counsel conceded: "Now I'll be upfront with the court that I didn't give them seven days. I … set [the hearing] six day[s] before." Although counsel asserted Newport "had a duty to file a motion for protection," counsel also stated: "I realize that once they file an apex affidavit, that triggers the plaintiff to then show that Mr. Hiles has superior or unique knowledge." At the conclusion of the hearing, Lagunes did not request a ruling on his objection to the timeliness of the Hiles affidavit,

and Newport did not request leave of court to file the affidavit outside the seven-day period set out in the rule. The trial court merely granted Lagunes's motion to compel.

"The purpose of the [Rule 199.6] filing requirement before the hearing is to prevent hearing by ambush." *Baures v. Cano*, No. 13-92-386-CV, 1994 WL 115862, at *4 (Tex. App.—Corpus Christi Apr. 7, 1994, writ denied) (not designated for publication); *see, e.g., Gutierrez v. Dallas Indep. Sch. Dist.*, 729 S.W.2d 691, 693 (Tex. 1987) (holding that discovery rules were amended to prevent trial by ambush and ensure fairness would prevail); *Penny v. El Patio, LLC*, 466 S.W.3d 914, 925 (Tex. App.—Austin 2015, pet. denied) (holding that one of purposes of discovery rules is to prevent trial by ambush); *Lopez v. La Madeleine of Tex., Inc.*, 200 S.W.3d 854, 860 (Tex. App.—Dallas 2006, no pet.) (same). Lagunes's counsel conceded he set the motion to compel hearing for a date just six days from the date the motion to compel was filed, depriving Newport of the ability to file an affidavit within the confines of Rule 199.6. Accordingly, we hold that because Lagunes's counsel set the hearing less than seven days after the filing of the motion to compel, Lagunes cannot now complain Newport failed to timely-file Hiles's affidavit. Lagunes's own actions prevented a timely filing. Because Newport has not procedurally defaulted its complaint, we address whether Lagunes satisfied the *Crown Central* guidelines, which would entitle him to take Hiles's deposition.

### *The Crown Central Guidelines*

The Texas Supreme Court first adopted the apex deposition guidelines, i.e., guidelines for determining when the deposition of a corporate president or other high level corporate official should be permitted, in *Crown Central Petroleum Corp. Alcatel USA, Inc.*, 11 S.W.3d at 175 (citing *Crown Central*, 904 S.W.2d at 128). The trial court evaluates the motion resisting the deposition by determining if the party seeking the deposition has "arguably shown" the proposed deponent has any unique or superior personal knowledge of discoverable information. *Id.* at 175–

76. If the party seeking the deposition cannot show the proposed deponent has any unique or superior personal knowledge of discoverable information, the trial court should not permit the deposition to go forward without a showing, after a good faith effort to obtain the discovery through less intrusive means, that: (1) there is a reasonable indication the proposed deponent's deposition is calculated to lead to the discovery of admissible evidence; and (2) the less intrusive methods of discovery are unsatisfactory, insufficient, or inadequate. *Id.* at 176. Thus, to be entitled to take Hiles's deposition, Lagunes had to show Hiles has unique or superior personal knowledge of discoverable information. *See id.* at 175–76. In the absence of such a showing, the trial court should have denied the motion to compel Hiles's deposition unless Lagunes established Hiles's deposition is calculated to lead to the discovery of admissible evidence and the less intrusive means to obtain that discovery are unsatisfactory, insufficient, or inadequate. *See id.* at 176.

### 1. *Unique or Superior Personal Knowledge*

Once Newport properly resisted the apex deposition, Lagunes first had to show Hiles has unique or superior personal knowledge of discoverable information. *Id.* "A showing of 'unique or superior knowledge' requires 'some showing beyond mere relevance, such as evidence that a high-level executive is the only person with personal knowledge of the information sought or that the executive arguably possesses relevant knowledge greater in quality or quantity than other available sources.'" *Semgroup Corp.*, 2016 WL 3085875, at \*1 (quoting *Alcatel USA, Inc.*, 11 S.W.3d at 179). "This requirement is not satisfied by merely showing that a high-level executive has some knowledge of discoverable information. If 'some knowledge' were enough, the apex deposition guidelines would be meaningless; they would be virtually indistinguishable from the scope of general discovery." *Alcatel USA*, 11 S.W.3d at 179. Also, evidence that a corporate executive has knowledge of company policies does not alone satisfy the first part of the *Crown*

*Central* guidelines because it does not show the executive has unique or superior knowledge of discoverable information. *Id.* at 177.

In his response to Newport's petition for writ of mandamus, Lagunes relies entirely on the arguments made by his attorney at the motion to compel hearing. The mandamus record contains a transcript of that hearing.

During the hearing, Lagunes's counsel alleged a proximate cause of Lagunes's fall "was the faulty fall protection and the lack of OSHA-required fall protections." Lagunes's counsel claimed that during the deposition of Eric Robinson, Lagunes learned Hiles entered into the contracts with subcontractors, Hiles signed change orders, and Hiles was "hands-on" when it came to safety issues. Lagunes argued that because Robinson was unaware of any contract between the property owner and the general contractor, Hiles would know about such a contract. Lagunes also alleged Newport's daily reports showed Hiles visited the construction site.

Lagunes's arguments rely, in part, on an incomplete transcript of Robinson's deposition.[5] At his deposition, Robinson explained Hiles is the president and owner of Newport and is Robinson's direct supervisor. Robinson described his day-to-day responsibilities as follows:

> . . . to provide support to what I call our front line, the people managing the projects. It begins with recruiting and hiring people in positions of supervision for our projects, training those folks, helping to establish proper policies and procedures so that we can bring our projects in on time and on budget.

When asked if he had ever seen a contract between the project owner and Newport, the general contractor, Robinson replied he had not. He said the only contracts he saw or reviewed were the subcontractor agreements. He was then asked:

> Q. Who would know best from Newport as to whether there are contracts between [the project owner] and Newport?

---

[5] Lagunes attached a partial transcript from Robinson's deposition to his reply to Newport's response to Lagunes's motion to compel.

A. I'm not sure who would know that.

Q. Okay. What about Hiles?

A. I would say he would.

Q. Okay. Does he usually sign the contracts?

A. He signs the subcontractor agreements.

Q. Is there anyone else in Newport that you know of who has authority to sign contractual agreements?

A. No, I do not.

When asked about the contractor's safety program, Robinson testified as follows:

Q. Okay. In terms of the contractor's safety program, if you've got a superintendent who — whether it's your lead or one of the other building superintendents who knows that — you know, orders the subcontractor's supervisor, hey, you-all have got to go work on some elevated portion of the building . . . does your supervisor have the authority to approve or review what fall protection they're going to be using?

A. Yes, they do.

. . .

Q. And was Mr. Hiles . . . hands-on when it came to safety and requiring fall protection?

A. Sure.

Regarding change orders, Robinson testified Hiles had to approve all change orders and neither Robinson nor the regional vice presidents could sign the orders.

Q. Okay. So he's hands-on —

A. That's right.

Q. — with that regard? . . . .

Robinson testified that although change orders had to be approved by Hiles, he and the purchasing manager could approve up to an aggregate amount of $5,000 in change orders, and individual superintendents could approve up to an aggregate amount of $500 without first

receiving Hiles's approval. Robinson said this allowed the work to proceed while waiting for Hiles's approval.

Lagunes points out that in addition to the foregoing, Hiles also visited the project site. Robinson testified Hiles visited the project site as did Salvador Pulgarin, a building superintendent on the project. Lagunes submitted an incomplete transcript of Pulgarin's deposition in which Pulgarin testified Hiles came to the worksite "maybe once a month." Additionally, Lagunes attached copies of "Daily Project Reports" that contained the following notations:

February 6, 2013: "Marcus Hile[s] on site visit"

March 1, 2013: "Per Marcus, change location of bath vanity in type [?] Bldgs, add tile [?] entry floors"
June 10, 2013: "Have told Stucco USA over & over that they need to install toe boards on scaffolds per Marcus H."

June 22, 2013: "Have told them many times but Stucco USA still has not installed toe boards on scaffolds per Marcus H."

Lagunes relies on the foregoing evidence to argue Hiles "was directly involved in the events which give rise to Lagunes's claims at all relevant times" because he executed subcontracts, handled all change orders, and performed regular site visits. According to Lagunes, because a corporation typically has a purchasing agent or contract specialist handling these matters, Hiles's involvement was unique in that he was quite involved with the day-to-day operations of the project, thereby imbuing Hiles with unique or superior personal knowledge of discoverable information. We disagree that this evidence establishes Hiles had the kind of unique or superior personal knowledge required to permit the taking of an apex deposition.

As set out above, Lagunes had the burden to show knowledge "beyond mere relevance," such as evidence that [Hiles] is the only person with personal knowledge of the information sought or that [Hiles] arguably possesses "relevant knowledge greater in quality or quantity than other available sources." *Alcatel USA*, 11 S.W.3d at 179; *Semgroup Corp.*, 2016 WL 3085875, at *1.

Although Hiles may possess some knowledge relevant to Lagunes's suit, we hold the evidence produced and relied upon by Lagunes fails to establish Hiles is the only person with personal knowledge of subcontracts, change orders, or how the work is or is not progressing on the project — or that his knowledge of these matters is "greater in quality or quantity than other available sources." Even when viewed in the most generous light, Lagunes's evidence "amounts to nothing more than the simple, obvious recognition that the highest-ranking corporate officer of any corporation has the ultimate responsibility for all corporate decisions and falls far short of the [*Crown Central*] standard." *AMR Corp. v. Enlow*, 926 S.W.2d 640, 644 (Tex. App.—Fort Worth 1996, orig. proceeding) (agreed with by *Alcatel USA*, 11 S.W.3d at 177). We hold this is insufficient for purposes of the "unique and superior personal knowledge" guideline of *Crown Central*.

Moreover, Robinson's response of "sure" to the question of whether Hiles was "hands-on when it came to safety and requiring fall protection" does not rise to the level of showing Hiles's knowledge of fall protection was unique, superior, or "greater in quality or quantity than other available sources." *Semgroup Corp.*, 2016 WL 3085875, at *1 (quoting *Alcatel USA, Inc.*, 11 S.W.3d at 179). Although Hiles signs contracts, Robinson admitted *he* saw or reviewed the subcontractor agreements. Accordingly, Lagunes failed to establish Hiles's knowledge of subcontractor contracts was unique or superior to Robinson's.

As to site visits, Newport does not dispute Lagunes's contention that Hiles visited the project. However, Lagunes does not contend, and there is no evidence to support, any assertion that Hiles was at the worksite on the day Lagunes was injured. The "Daily Project Reports" appear to be composed by a superintendent, show the meetings were attended by "subs and staff," "all workers," or "none," and detail the "equipment on job," "delays," "written instructions to tradesmen/vendors," "work in progress," and "customer requests/changes." The reports show

Hiles may have given instructions or been on the site at certain times, but these reports do not prove his knowledge was unique, superior, or "greater in quality or quantity than other available sources." *Semgroup Corp.*, 2016 WL 3085875, at \*1 (quoting *Alcatel USA, Inc.*, 11 S.W.3d at 179). The "Daily Project Reports" show — at most — only that Hiles "has some knowledge of discoverable information," which does not satisfy *Crown Central*. *See Alcatel USA*, 11 S.W.3d at 179. Furthermore, allegations of ultimate responsibility and access are not sufficient to show "the [apex] deposition is reasonably calculated to lead to the discovery of admissible evidence that cannot be obtained by less-intrusive methods." *See In re Daisy Mfg. Co.*, 17 S.W.3d 654, 659 (Tex. 2000) (orig. proceeding) (per curiam).

Thus, we conclude Lagunes did not satisfy the "unique or superior personal knowledge" prong of *Crown Central*. Given this failure, the trial court should have denied Lagunes's motion to compel and required Lagunes to attempt to obtain the discovery through less intrusive methods. *See Alcatel USA, Inc.*, 11 S.W.3d at 176.

### 2. *Less Intrusive Means*

Having failed to establish that Hiles has unique or superior personal knowledge of discoverable information, Lagunes was required to satisfy the second requirement set out in *Crown Central* before he could take the apex deposition. *See id.* Lagunes had to establish the information he sought to obtain from Hiles cannot "'be obtained by less-intrusive methods.'" *Semgroup Corp.*, 2016 WL 3085875, at \*2 (quoting *Daisy Mfg.*, 17 S.W.3d at 659). As noted above, after making a good faith effort to use less intrusive methods, the party seeking the apex deposition must then show: (1) there is a reasonable indication the official's deposition is calculated to lead to the discovery of admissible evidence, and (2) less intrusive methods of discovery are unsatisfactory, insufficient, or inadequate. *See Alcatel USA, Inc.*, 11 S.W.3d at 176.

Lagunes contends he has already shown that less intrusive means have been ineffective. *See id.* Again, we disagree. The evidence before the trial court indicated several superintendents had knowledge of the worksite and fall protection measures, and Robinson reviewed agreements with subcontractors. Thus, the evidence establishes there are individuals with the knowledge Lagunes claims he can only obtain from Hiles, negating his contention that less intrusive means are insufficient, unsatisfactory, or inadequate. *See id.* Although Lagunes claims he engaged in "substantial written discovery," took the depositions of two superintendents involved in the project, and took Robinson's deposition, his argument here is only that "finger-pointing by the defendants" remains.

In *Daisy Manufacturing*, the plaintiff argued she should be permitted to take an apex deposition because she had previously deposed three lower-level company officials. 17 S.W.3d 658. The supreme court held this alone is insufficient under *Crown Central*:

> [A] discovering party's burden is not perfunctorily met by any showing that the party employed less-intrusive discovery methods. *Crown Central* states only that "*[d]epending upon the circumstances of the particular case*, [less intrusive] methods could include the depositions of lower level employees, the deposition of the corporation itself, and interrogatories and requests for production of documents directed to the corporation." *Crown Central*, rather, instructs courts to measure whether the discovering party made a reasonable effort to obtain discovery through less-intrusive methods. Merely completing some less-intrusive discovery does not trigger an automatic right to depose the apex official.

*Id.* (emphasis in original).

Here, although Lagunes has engaged in discovery, he does not identify any relevant information he seeks from the apex deposition that he attempted and failed to obtain from these other sources. *See Alcatel USA*, 11 S.W.3d at 180 (party failed to identify relevant information it sought from apex deponent that it had attempted and failed to obtain from other deponents).

Therefore, we hold Lagunes failed to establish, as he must, that less intrusive methods of discovery are unsatisfactory, insufficient, or inadequate to obtain the information he claims to acquire by taking Hiles's deposition.  *See id.* at 176.

## CONCLUSION

Based on the foregoing, we hold the trial court erred in granting "[Lagunes's] Motion to Compel Newport Classic Homes' Witness Marcus Hiles's Deposition."  Accordingly, we conditionally grant Newport's petition for writ of mandamus and direct the trial court to vacate its order granting the motion to compel Hiles's deposition.  The writ will issue only in the event the trial court fails to comply with our directive.

Marialyn Barnard, Justice