**Opinion issued August 20, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-14-00964-CV**

**NO. 01-15-00126-CV**

———————————

**IN RE TMX FINANCE OF TEXAS, INC., TITLEMAX OF TEXAS, INC., AND TMX FINANCE LLC, Relators**

---

**Original Proceeding on Petition for Writ of Mandamus**

---

**O P I N I O N**

In these two original proceedings, relators, TMX Finance of Texas, Inc.,

TitleMax of Texas, Inc., and TMX Finance LLC (collectively, "TMX"), seek a

writ of mandamus compelling the trial court to vacate its orders denying their

motions to quash and for protection regarding the depositions of Tracy Young and

Otto Bielss.[1]  Relators contend that the trial court erred by failing to apply the apex deposition doctrine to bar the depositions of Young, the Chief Executive Officer of TMX Finance LLC, and Bielss, the Chief Operating Officer of TMX Finance LLC.

We conditionally grant the petition for writ of mandamus in appellate cause number 01-14-00964-CV, regarding the deposition of Young.  We deny the petition for writ of mandamus in appellate cause number 01-15-00126-CV, regarding the deposition of Bielss.

## Background

The real parties in interest, Wellshire Financial Services, LLC *d/b/a* Loanstar Title Loans, *d/b/a* Moneymax Title Loans, and *d/b/a* Loanmax, Meadowwood Financial Services, LLC, *d/b/a* Loanstar Loans, and *d/b/a* Moneymax Title Loans, and Integrity Texas Funding, LP (collectively, "LoanStar"), filed suit against TMX, their competitor in the title-loan market, and asserted causes of action for misappropriation of trade secrets and tortious interference with existing contracts and prospective business relations.  LoanStar

---

[1]  The underlying case is *Wellshire Financial Services, LLC d/b/a Loanstar Title Loans, d/b/a Moneymax Title Loans, and d/b/a Loanmax; Meadowwood Financial Services, LLC, d/b/a Loanstar Loans, and d/b/a Moneymax Title Loans; and Integrity Texas Funding, LP v. TMX Finance Holdings, Inc., TMX Finance, LLC, TMX Finance of Texas, Inc., and TitleMax of Texas, Inc.*, cause number 2013-33584, pending in the 152nd District Court of Harris County, Texas, the Hon. Robert Schaffer presiding.

alleged that TMX employees improperly accessed driving records maintained by the Texas Department of Motor Vehicles ("DMV") to solicit LoanStar customers.

After taking depositions of several lower-level TMX employees, LoanStar noticed the depositions of the corporate representatives of TitleMax of Texas, Inc., TMX Finance LLC, and TMX Finance of Texas, Inc. TMX objected to the scope of the proposed topics to be discussed in the depositions, and the trial court held a hearing on these objections and sustained several of TMX's objections.

Following the trial court's ruling, TMX allegedly failed to produce documents responsive to discovery requests, and LoanStar withdrew its notice for the deposition of the corporate representatives of the TMX entities. Instead, LoanStar noticed the deposition of Tracy Young, the CEO of each of the three TMX entities.[2] TMX filed a motion to quash and for protection from the "apex deposition" of Young, arguing that Young, as the CEO, does not have "unique or superior personal knowledge" of the facts relevant to the suit such that LoanStar can proceed with his deposition. TMX attached an affidavit from Young, in which he averred as follows:

> 2. I am the CEO of TMX Finance LLC, TitleMax of Texas, Inc. and TMX Finance of Texas, Inc. The latter two entities have approximately 950 employees and 366 stores in Texas.

---

[2] TMX Finance of Texas, Inc. and TitleMax of Texas, Inc. are wholly-owned by TMX Finance LLC, which, in turn, is wholly-owned by TMX Finance Holdings, Inc. TMX Finance Holdings, Inc. is a defendant in the underlying litigation, but it is not a party to these mandamus proceedings.

3.　I do not have any first-hand personal knowledge of relevant facts concerning the subject matter of the above-captioned lawsuit, including facts and allegations relating to (a) marketing to or soliciting customers of competitors, including [LoanStar]; (b) use of databases in an attempt to locate customers of competitors, including [LoanStar]; (c) soliciting [LoanStar's] customers in parking lots; (d) acquiring VIN or license plate numbers in parking lots; and (e) lists of [LoanStar's] customers. While I have knowledge of some facts relating to some of these issues by reason of my position as CEO, all of those facts were relayed to me in the course of privileged communications by counsel representing [TMX].

4.　I do not possess any unique or superior personal knowledge regarding the issues set forth in the preceding paragraph beyond that of other of [TMX's] personnel.

TMX also attached excerpts from depositions of lower-level TMX employees who all testified that they had either never met Young or had only ever had casual conversation with him and had never discussed TMX's marketing strategies.

In response, LoanStar argued and presented evidence that Young was the only member, manager, and employee of one of the defendant-entities, TMX Finance LLC. LoanStar argued that because Young was the only employee of TMX Finance LLC, the apex deposition doctrine was inapplicable because Young was "the only individual who can have personal knowledge of the conduct and actions of TMX Finance" and, thus, preventing Young's deposition would "completely bar LoanStar from obtaining any deposition testimony from a named party in this action." LoanStar also argued that Young was "directly involved in

4

the [TMX] entities' operations and marketing approaches" and therefore had unique or superior personal knowledge of discoverable information.

As evidence that Young possessed unique or superior personal knowledge of discoverable information, LoanStar attached the affidavit of Daniel Baker, a former TMX district manager for the Houston area. Baker averred:

4. From January 2012 to September 2013, I reported directly to Franco Zizzo, the Regional Manager for Houston, who reported directly to Linda McDonald, the Vice President of Operations in Texas. During this time period, Ms. McDonald reported directly to Otto [Bielss], the Senior Vice President of Operations, who reported directly to Tracy Young, the President of TitleMax.

5. When I was a district manager in Houston, TitleMax's corporate headquarters emphasized marketing of auto title loans and heavily pressured employees to meet unachievable performance goals. For example, Mr. [Bielss] would hold monthly telephone conference calls with the district managers and regional managers in Texas during which he would berate regional managers and district managers, even if they met performance metrics, in order to remind us that we were all expendable and numbers were king.

6. I was one of the most senior district managers in Houston, and regularly discussed performance and operations with other district managers. I would also regularly monitor the performance of my district and other districts in Houston.

7. At some point during my employment, I noticed that one district in Houston had a significant increase in loan volume. I reached out to the district manager for that district, Nelson Parada, regarding the increase in loan volume and ask[ed] him what caused the increased loan volume. Mr. Parada informed me that he was receiving lists of customers of competitors, including LoanStar customers, from a TitleMax employee named Ishmael Hernandez and that he was using the lists to

5

solicit customers of LoanStar. I reported the use of these customer lists to Mr. Zizzo, who told me that the district in question needed the numbers and to stop asking questions.

8. When I was a district manager in Houston, I heard that TitleMax employees would go to parking lots of competitors, including LoanStar, to record license plate numbers.

LoanStar also attached the affidavit of Harold Landers, a former TMX regional manager for the Dallas/Fort Worth area. Landers averred that the "corporate group at TitleMax also set extremely high performance goals for the stores, districts, and regions in Texas, and the general managers and district managers operated under pressure to aggressively 'grow' new business in their stores." Landers averred that he participated in monthly conference calls with district and regional managers, Bielss, "other members of the corporate operations teams, and corporate recruiters and trainers." During these calls, the participants reviewed reports regarding store performance, the district managers defended the performance of stores in their districts by explaining marketing efforts, and Bielss would ask most of the questions on the calls. Landers averred that he raised concerns with Bielss and McDonald concerning the performance goals, informing them of his belief that "the combination of pressure and fear would cause employees to leave the company or engage in improper practices in order to meet the performance goals." Aside from stating that Bielss directly reported to Young,

6

Landers did not aver that Young ever participated in the monthly conference calls or that he ever raised his concerns over performance goals with Young.

As further evidence that Young has unique and superior personal knowledge, LoanStar attached a letter it sent to Vin Thomas, identified as "Assistant General Counsel" for "TMX Finance LLC," in which it demanded that TMX cease and desist conducting searches of DMV records to identify LoanStar customers. On TitleMax letterhead, Thomas replied that TMX "denies the allegations in your letter," that it "does not consider the above allegations to be a proper business practice," and that it "has reminded all Texas managers of its position on this practice." LoanStar argued:

> As Mr. Young is the only employee of TMX Finance, he is also the only person who could have communicated to Mr. Thomas TMX Finance's denial of LoanStar's allegations, the only person who could have instructed Mr. Thomas as to TMX Finance's position with respect to appropriate business practices, and the only person who could have directed the 'reminding' of the TitleMax Texas employees.

LoanStar argued that Young "was involved in communications regarding TitleMax's response to LoanStar's demand that TitleMax cease and desist from illegally identifying and marketing to LoanStar customers" and, therefore, that there is "accordingly no question that Mr. Young possesses 'superior or unique personal knowledge of discoverable information.'"

The trial court held a hearing on TMX's motion for protection on November 21, 2014. At the hearing, LoanStar described Young as the sole employee of TMX

7

Finance LLC and argued that it was entitled "to take evidence from the single employee of a Defendant in this case." LoanStar again relied on the letter from Thomas, arguing that only Young, as the sole employee of TMX Finance LLC, could have denied the allegations in LoanStar's cease and desist letter and reminded TMX's Texas managers that conducting searches of LoanStar customers was not a proper business practice. TMX responded that the reason Young is the only employee of TMX Finance LLC is because that entity "sits atop all the other entities."

When asked by the trial court what evidence LoanStar had that Young "orchestrated what was going on," LoanStar's counsel responded, "[W]e have evidence that Tracy Young is the guy responsible for everything that happens in this company. That—this is a small industry, [Y]our Honor. This [cease and desist] letter was sent to TMX Finance because that's Tracy Young. Tracy is someone who has his hands in the business." LoanStar's counsel also pointed to TMX Finance LLC's 2012 10-K, filed with the Securities and Exchange Commission and included as an exhibit to LoanStar's response to TMX's motion for protection, which allegedly reflected that everyone at TMX Finance LLC "serves at [Young's] pleasure, at his discretion" and that "he is the person who is in charge of all of the . . . Texas entities."

8

The trial court ultimately denied TMX's motion to quash and for protection and ordered TMX to produce Young for deposition. TMX filed a petition for writ of mandamus in this Court, in appellate cause number 01-14-00964-CV, seeking to compel the trial court to vacate its order denying the motion for protection and compelling Young's deposition. This Court stayed Young's deposition pending resolution of the mandamus proceeding.

Shortly after this Court stayed Young's deposition, in December 2014, LoanStar noticed the deposition of Otto Bielss. In August 2014, TMX had offered Bielss, who, at the time, had served as Senior Vice President of Operations, as the corporate representative for deposition. LoanStar did not depose Bielss at that time. In response to LoanStar's December 2014 notice of deposition, TMX filed a motion for protection, arguing that the apex deposition doctrine barred the deposition of Bielss, who now served as TMX Finance LLC's Chief Operating Officer, a position he had held since October 2014. TMX argued that Bielss lacked unique or superior personal knowledge of relevant facts, and it offered Coleman Gaines, Senior Vice President of Operations West, as its corporate representative for deposition.

In support of its motion, TMX attached Bielss's affidavit, in which he averred:

> My title is Chief Operating Officer, TMX Finance LLC, and in that capacity I provide services to TMX Finance LLC. I have been Chief

Operating Officer since October 2014. Prior to this, I provided services to TMX Finance LLC in different executive positions during the relevant time period at issue in this litigation.

During the relevant time period, I was towards the very top of layers of management but not over any individual TitleMax store. As such, I do not have firsthand personal knowledge of the day-to-day operations or marketing activities of any TitleMax store in Texas.

Likewise, I do not have firsthand personal knowledge of the relevant facts concerning the subject matter of the above-captioned lawsuit, including facts and allegations relating to the following:

   a. marketing or soliciting customers of competitors, including but not limited to [LoanStar];

   b. using databases, including PublicData or DataTrax, in an attempt to locate customers of competitors including [LoanStar];

   c. marketing or soliciting [LoneStar's] customers in parking lots;

   d. acquiring VIN or license plate numbers in parking lots; or

   e. acquiring lists of [LoneStar's] customers.

While I have limited knowledge regarding this information, it was only obtained by virtue of my executive positions or through conversations with legal counsel. I do not possess any unique or superior personal knowledge regarding the information in this paragraph.

TMX argued that, because of his corporate position, Bielss "was not involved in the daily operations of any particular [TMX] office," and it attached excerpts from the depositions of lower-level employees that reflected they had little contact with Bielss.

10

In response, LoanStar argued that the apex deposition doctrine did not protect Bielss because he had unique or superior personal knowledge of discoverable facts, including responsibility for overseeing TMX's Texas operations and knowledge that LoanStar had made complaints concerning TMX's alleged improper marketing practices. LoanStar presented deposition excerpts from other TMX employees indicating that Bielss was "aware of the day-to-day operations of TitleMax in Texas," including evidence that he conducted conference calls with local managers concerning the performance of their stores, that he met face-to-face with local managers concerning performance, and that he had conversations with local managers concerning marketing tactics. LoanStar presented evidence from McDonald, a TMX vice president, that Bielss had contacted her concerning allegations made by LoanStar that TMX employees were going into the parking lots of its competitors. LoanStar argued that because Bielss "monitored stores and employees across the state, he can provide greater insight into TitleMax's operations than any of the lower-level employees who have been deposed to date."

At the hearing on TMX's motion for protection, the trial court stated that it appeared Bielss "was, if not intimately, he was actively involved in what these companies of Texas [were] doing" and that LoanStar sought Bielss's testimony "as a fact witness, not as a corporate [representative]." The trial court denied TMX's motion for protection and entered an order compelling the deposition of Bielss.

TMX sought mandamus relief from this order in appellate cause number 01-15-00126-CV. We stayed the deposition of Bielss pending resolution of this mandamus proceeding.

**Apex Deposition Doctrine**

TMX contends that the trial court erred in denying its motions for protection regarding the depositions of Young and Bielss because the apex deposition doctrine bars LoanStar's attempt to conduct these two depositions.

*A.* *Standard of Review*

Mandamus relief is available only to correct a clear abuse of discretion when there is no other adequate remedy by appeal. *In re Alcatel USA, Inc.*, 11 S.W.3d 173, 175 (Tex. 2000) (orig. proceeding) (citing *Walker v. Packer*, 827 S.W.2d 833, 839–44 (Tex. 1992)); *see In re Daisy Mfg. Co.*, 17 S.W.3d 654, 658 (Tex. 2000) (per curiam) (orig. proceeding). A trial court commits a clear abuse of discretion when its ruling is "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (orig. proceeding). A trial court has no discretion in determining what the law is or in applying the law to the particular facts. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004). A party may properly seek mandamus relief to determine whether the trial court correctly ordered an apex deposition. *See In re Alcatel USA*, 11 S.W.3d at 175; *In re Miscavige*, 436 S.W.3d 430, 435 (Tex.

12

App.—Austin 2014, orig. proceeding) ("Mandamus relief is appropriate when a trial court allows an apex deposition to go forward in violation of the standard governing such discovery.").

## B.    *Application of Apex Deposition Doctrine*

A party to a lawsuit is entitled to discovery "that is relevant to the subject matter of the claim, and which appears reasonably calculated to lead to the discovery of admissible evidence." *Crown Cent. Petroleum Corp. v. Garcia*, 904 S.W.2d 125, 127 (Tex. 1995) (quoting *Monsanto Co. v. May*, 889 S.W.2d 274, 276 (Tex. 1994)). Texas Rule of Civil Procedure 199.1 allows a party to take the oral deposition of "any person." TEX. R. CIV. P. 199.1(a); *Crown Cent.*, 904 S.W.2d at 127. However, the person noticed for deposition has the right to protection "from undue burden, unnecessary expense, harassment or annoyance, or invasion of personal, constitutional, or property rights." *Crown Cent.*, 904 S.W.2d at 127; *see also* TEX. R. CIV. P. 192.6(b) (allowing trial court to grant protective order in favor of person from whom discovery is sought).

"An apex deposition is the deposition of a corporate officer at the apex of the corporate hierarchy." *AMR Corp. v. Enlow*, 926 S.W.2d 640, 642 (Tex. App.—Fort Worth 1996, orig. proceeding). When a party seeks to depose a high-level corporate official, such as a corporate president or chief executive officer, and that official or the corporation files a motion for protection to prohibit the

13

deposition accompanied by an affidavit from the official denying any knowledge of relevant facts, the trial court must first determine whether the party seeking the deposition "has arguably shown that the official has any unique or superior personal knowledge of discoverable information." *Crown Cent.*, 904 S.W.2d at 128. An individual has "unique or superior personal knowledge" if the individual is "the only person with personal knowledge of the information sought" or the individual "arguably possesses relevant knowledge greater in quality or quantity than other available sources." *In re Alcatel USA*, 11 S.W.3d at 179.

If the party seeking the deposition cannot show that the corporate official has any unique or superior personal knowledge of discoverable information, the trial court should grant the motion for protection and require the party seeking the deposition to "attempt to obtain the discovery through less intrusive methods." *Crown Cent.*, 904 S.W.2d at 128; *see In re Alcatel USA*, 11 S.W.3d at 176. "Less intrusive methods" depend on the circumstances of the case, but can include depositions of lower-level employees, the deposition of the corporation itself, and interrogatories and requests for production of documents directed to the corporation. *Crown Cent.*, 904 S.W.2d at 128.

After making a good faith effort to obtain the sought-after discovery through less intrusive methods, the party seeking the apex deposition may attempt to show that (1) there is a reasonable indication that the corporate official's deposition is

calculated to lead to the discovery of admissible evidence, and (2) the less intrusive methods of discovery are unsatisfactory, insufficient, or inadequate. *Id.* If the party seeking the deposition makes this showing, then the trial court should modify or vacate the protective order. *Id.*; *In re Daisy Mfg. Co.*, 17 S.W.3d at 658 ("Merely completing some less-intrusive discovery does not trigger an automatic right to depose the apex official."). If the party seeking the deposition does not make this showing, the trial court should leave the protective order in place. *Crown Cent.*, 904 S.W.2d at 128.

### 1. *Deposition of Tracy Young*

In arguing that mandamus relief with respect to Young's deposition ought to be denied, LoanStar first contends that the apex deposition doctrine does not apply in this instance because evidence before the trial court established that Young is the "sole employee, member, and manager" of TMX Finance LLC, a defendant in this case, and, thus, preventing the deposition of Young "would force LoanStar to go to trial without direct, oral testimony from the only employee of a named Defendant."

Although the parties disagree on whether Young is the sole employee, member, and manager of TMX Finance LLC or whether TMX Finance LLC has

other officers in addition to Young,[3] the evidence is undisputed that the defendants are related corporate entities, that Young is the CEO of each of the three defendants, and that TMX Finance LLC owns all of the shares of defendants TMX Finance of Texas, Inc. and TitleMax of Texas, Inc. The defendants thus operate as a corporate hierarchy with TMX Finance LLC as the parent company of TMX Finance of Texas, Inc. and TitleMax of Texas, Inc.

In an analogous case, the Austin Court of Appeals addressed whether the apex deposition doctrine applies to the head of a corporate entity when both the entity and the executive himself were named defendants in the litigation. *See In re Miscavige*, 436 S.W.3d at 436–38. The Austin court noted that "[t]he apex-deposition rule becomes a potential issue only when an executive's corporate position bears some relationship to the underlying information the deposing party seeks." *Id.* at 437. The court then concluded that "this same principle is applicable to depositions of named parties who hold apex positions." *Id.* If a high-level executive of an entity is named as a defendant "based on some dispute that is unrelated to his status as an executive, then the plaintiff has a right to obtain the executive's deposition just as he or she would any other party." *Id.* If, however, an executive is named as a defendant "based on his capacity as an executive, then

---

[3]     TMX Finance LLC's 2012 10-K, filed with the Securities and Exchange Commission and offered into evidence in the underlying proceeding by LoanStar, reflects that TMX Finance LLC has six officers and managers in addition to Young, including Bielss.

the apex doctrine is implicated and the *Crown Central* standard should be applied to a request for his deposition." *Id.* at 438; *cf. In re Titus Cnty.*, 412 S.W.3d 28, 35 (Tex. App.—Texarkana 2013, orig. proceeding) (stating that "the apex doctrine does not protect named parties from deposition" in condemnation case in which one of named defendants was trustee of trust that partially owned property at issue but also owned interest in property at issue in his individual capacity, and county sought his deposition because, as partial owner, he would have personal knowledge concerning property's value); *Simon v. Bridewell*, 950 S.W.2d 439, 442 (Tex. App.—Waco 1997, orig. proceeding) ("A corporate officer is not exempt from deposition by the 'apex' doctrine merely because he is a corporate official. Rather, the doctrine may be invoked only when the deponent has been noticed for the deposition because of his corporate position.").

We conclude that this factual situation is similar to that presented in *In re Miscavige*. LoanStar seeks Young's deposition based on his capacity as CEO of TMX Finance LLC, the parent company of TMX Finance of Texas, Inc. and TitleMax of Texas, Inc. Regardless of whether Young is the sole employee, member, and manager of TMX Finance LLC, the defendant entities all operate as part of a corporate "family," with Young at the head of each entity. LoanStar seeks to depose Young "based on his capacity as an executive." *See In re Miscavige*, 436 S.W.3d at 438. We hold that, as such, the apex deposition doctrine

17

applies, and to compel Young's deposition, LoanStar was required to demonstrate that it could satisfy the *Crown Central* test for allowing apex depositions. *See id.* We therefore turn to whether the trial court abused its discretion when it ruled that LoanStar could take Young's apex deposition.

LoanStar argues that, if the apex deposition doctrine applies, Young cannot take advantage of its protections because his affidavit attached to TMX's motion for protection is insufficient to establish that he does not have unique or superior knowledge of discoverable information. We disagree.

TMX filed an affidavit from Young with its motion for protection. In this affidavit, Young averred:

2.   I am the CEO of TMX Finance LLC, TitleMax of Texas, Inc. and TMX Finance of Texas, Inc. The latter two entities have approximately 950 employees and 366 stores in Texas.

3.   I do not have any first-hand personal knowledge of relevant facts concerning the subject matter of the above-captioned lawsuit, including facts and allegations relating to: (a) marketing to or soliciting customers of competitors, including [LoanStar]; (b) use of databases in an attempt to locate customers of competitors, including [LoanStar]; (c) soliciting [LoanStar's] customers in parking lots; (d) acquiring VIN or license plate numbers in parking lots; and (e) lists of [LoanStar's] customers. While I have knowledge of some facts relating to some of these issues by reason of my position as CEO, all of those facts were relayed to me in the course of privileged communications by counsel representing [TMX].

4.   I do not possess any unique or superior personal knowledge regarding the issues set forth in the preceding paragraph beyond that of other of Defendants' personnel.

18

LoanStar argues that Young "does not, and cannot, claim that he does not have unique or superior knowledge with respect to TMX Finance" and that, "as its only employee, Mr. Young by definition has 'unique' knowledge of TMX Finance's participation in, reaction to, and investigation into the illegal conduct forming the basis of this case."

A corporate official, or the corporate entity on the official's behalf, invokes the protection of the apex deposition doctrine by filing a motion for protection accompanied by the affidavit of the official "denying any knowledge of relevant facts." *Crown Cent.*, 904 S.W.2d at 128. This Court has rejected a "mechanical application of *Crown Central* in determining the sufficiency of an affidavit to invoke the apex doctrine." *See In re BP Prods. N. Am. Inc.*, No. 01-06-00613-CV, 2006 WL 2192546, at \*5 (Tex. App.—Houston [1st Dist.] Aug. 4, 2006, orig. proceeding) (mem. op.). In determining the sufficiency of a corporate official's affidavit, the question is whether the official "sufficiently denied knowledge of any relevant facts regarding" the subject matter of the litigation. *See In re Tex. Genco, LP*, 169 S.W.3d 764, 768 (Tex. App.—Waco 2005, orig. proceeding); *In re Burlington N. & Santa Fe Ry. Co.*, 99 S.W.3d 323, 326 (Tex. App.—Fort Worth 2003, orig. proceeding) ("BNSF properly initiated the apex guideline proceedings set forth in *Crown Central* by moving for protection and filing Rose's affidavit denying any knowledge of relevant facts."); *In re El Paso Healthcare Sys.*, 969

19

S.W.2d 68, 73 (Tex. App.—El Paso 1998, orig. proceeding) ("El Paso Healthcare established by its motion and affidavit that Rolfe is a corporate president who does not participate in the day-to-day administration of units within this particular hospital and who possesses no discoverable personal knowledge. This is sufficient to satisfy El Paso Healthcare's burden under *Crown Central Petroleum Corp.*"). Once the corporate official moves for protection and files a sufficient affidavit, the burden shifts to the party seeking the apex deposition to demonstrate that the official has unique or superior personal knowledge of discoverable information. *See In re Burlington N. & Santa Fe Ry. Co.*, 99 S.W.3d at 326.

Here, as we have already held, the fact that Young may be the sole employee, member, and manager of TMX Finance LLC does not automatically preclude application of the apex deposition doctrine. In his affidavit, Young averred that he does not have any "first-hand personal knowledge of relevant facts concerning the subject matter of" the underlying litigation, and he then identified five areas relating to allegations made by LoanStar. He averred that he does not "possess any unique or superior personal knowledge regarding" these issues relative to other TMX personnel. Young also averred that while he has "knowledge of some facts relating to some of these issues by reason of [his] position as CEO," he obtained that knowledge through privileged communications with TMX's counsel.

20

As the Texas Supreme Court stated in *In re Alcatel USA*, the *Crown Central* guidelines require more than "some knowledge of discoverable information" to compel an apex deposition; *Crown Central* instead requires that the corporate official arguably have "unique or superior personal knowledge of discoverable information." 11 S.W.3d at 179; *Crown Cent.*, 904 S.W.2d at 128; *In re Taylor*, 401 S.W.3d 69, 74 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding) ("*Crown Central* does not require apex officials to assert total ignorance of all possible facets of a controversy."); *In re BP Prods. N. Am. Inc.*, 2006 WL 2192546, at *6 ("Having 'some knowledge of discoverable information' does not render an affidavit insufficient."). Young specifically denied having unique or superior knowledge of discoverable information relating to LoanStar's allegations in the underlying litigation. We conclude that Young's affidavit was sufficient to invoke the protections of the apex deposition doctrine, and, thus, the burden then shifted to LoanStar to demonstrate that, despite his position as CEO, Young possesses unique or superior knowledge of discoverable information. *See In re Tex. Genco*, 169 S.W.3d at 768; *In re Burlington N. & Santa Fe Ry. Co.*, 99 S.W.3d at 326; *In re El Paso Healthcare Sys.*, 969 S.W.2d at 73.

TMX argues that LoanStar did not establish that Young "has any unique or superior personal knowledge of discoverable information." *See Crown Cent.*, 904 S.W.2d at 128. In response, LoanStar contends that it has arguably shown that

Young possesses unique or superior personal knowledge because, as the sole employee of TMX Finance LLC, "only Mr. Young can testify regarding the involvement of TMX Finance in the illegal conduct forming the basis of LoanStar's case." LoanStar argues that record evidence establishes that TMX Finance LLC "did interact and communicate with [TMX] Finance of Texas and TitleMax of Texas expressly regarding the subject matter of this case" and points to the letter that TMX's deputy general counsel, Thomas, sent to LoanStar in response to LoanStar's cease and desist letter. Because Young is "the sole employee of, and the only individual with any authority at, TMX Finance," LoanStar argues that there is "no question" that Young has "unique or superior knowledge" of relevant facts and discoverable information. We agree with TMX.

LoanStar assumes that because Young is the CEO and sole employee of TMX Finance LLC, he necessarily possesses "unique or superior knowledge" concerning the alleged misconduct committed by lower-level managers and employees of TMX Finance of Texas, Inc. and TitleMax of Texas, Inc. LoanStar, however, presented no evidence beyond its own allegations in its pleadings that TMX Finance LLC, the parent company of TMX Finance of Texas and TitleMax of Texas, exerts any control over the marketing efforts of these two subsidiaries, and it presented no evidence that Young was personally involved in directing the marketing strategies of the TMX entities. The affidavits that LoanStar presented in

22

response to TMX's motion for protection state only that "TitleMax's corporate headquarters emphasized marketing of auto title loans and heavily pressured employees to meet unachievable performance goals" and that the "corporate group at TitleMax also set extremely high performance goals for the stores, districts, and regions in Texas, and the general managers and district managers operated under pressure to aggressively 'grow' new business in their stores." The affidavits reflect that Bielss held monthly conference calls in which the participants discussed marketing and store performance, but the affidavits give no indication that Young was involved in these meetings. TMX, in support of its motion for protection, presented deposition excerpts from several lower-level TMX employees indicating that few of them had even met Young, and those few had never discussed marketing or the alleged misconduct at issue with him.

With respect to the letter from Thomas to LoanStar, even if the letter was composed at the direction of Young, as LoanStar contends, the letter reflects, at most, Young's knowledge that LoanStar has made allegations of improper conduct against TMX and a blanket reminder from Young to "all Texas managers" that TMX does not consider the alleged misconduct "to be a proper business practice."

Merely having some knowledge of the subject matter of a dispute is not enough to compel an apex deposition. *See In re Alcatel USA*, 11 S.W.3d at 179 (stating that *Crown Central* is "not satisfied by merely showing that a high-level

23

executive has some knowledge of discoverable information"). As the Texas Supreme Court has held, "Allowing apex depositions merely because a high-level corporate official possesses apex-level knowledge would eviscerate the very guidelines established in *Crown Central*." *Id.* at 177. The letter from Thomas might be some evidence that Young has knowledge that LoanStar had made allegations of misconduct and knowledge of company policies concerning the propriety of the disputed actions, but it is not evidence that Young has any "unique or superior" knowledge about the alleged misconduct itself relative to lower-level employees in the corporate hierarchy. *See id.* ("Testimony that a corporate executive possesses knowledge of company policies does not, by itself, satisfy the first *Crown Central* test because it does not show that the executive has unique or superior knowledge of discoverable information."); *In re Cont'l Airlines, Inc.*, 305 S.W.3d 849, 853–58 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding) (holding that CEO of Continental Airlines did not have unique or superior personal knowledge concerning cause of airline crash despite giving press conference after crash, sending letter to passengers after crash, receiving briefing concerning crash from lower-level employees, and conducting interview with two pilots present on affected flight).

We conclude that LoanStar, the party seeking the deposition of Young, has not shown that Young possesses unique or superior knowledge of discoverable

information.  *See Crown Cent.*, 904 S.W.2d at 128.  LoanStar must therefore attempt to obtain discovery through less intrusive methods before it may depose Young.[4]  *See id.*; *see also In re Alcatel USA*, 11 S.W.3d at 176 ("The party seeking the apex deposition is required to pursue less intrusive means of discovering the information only when that party cannot make the requisite showing concerning unique or superior knowledge.").  We hold that the trial court erred by compelling the apex deposition of Young.

We sustain TMX's issue with respect to the deposition of Young.

## 2.     *Deposition of Otto Bielss*

Bielss was TMX's Senior Vice President of Operations during the time period in which the alleged misconduct occurred.  In October 2014, he became TMX's Chief Operating Officer.  LoanStar argued that during Bielss' tenure as Senior Vice President of Operations, Bielss oversaw TMX's rapid expansion in the Texas title-loans market and instituted an "aggressive growth strategy" that pressured TMX managers and employees to increase the title loans sold.  LoanStar argued that it was in this environment that TMX employees "began engaging in illegal marketing practices to identify and convert LoanStar's customer

---

[4]     LoanStar argues that it has "attempted to pursue less intrusive means of discovery," but unless it is allowed to depose Young, it "has no other means by which to seek its requested discovery."  As we hold below, however, LoanStar may permissibly depose Bielss, TMX Finance LLC's chief operating officer.  Thus, LoanStar has available to it a less intrusive means of obtaining the sought-after discovery.

relationships throughout the state of Texas, and continued to do so over several years."

LoanStar presented evidence that while he was Senior Vice President of Operations, Bielss held monthly conference calls in which the participants—which included district managers, regional managers, and "other members of the corporate operations teams"—reviewed reports concerning individual store performance, and the district managers defended "the performance of their stores by explaining their operations and marketing efforts." Bielss "would ask most of the questions on the call, and would direct the questions to the district manager who supervised the general manager in the store that was being referenced." Landers, a former regional manager in Dallas/Fort Worth, had concerns that the performance goals discussed within these conference calls were "unreasonable and unattainable," and he brought this up with Bielss and McDonald, the Vice President of Operations for Texas. Landers averred that he told Bielss and McDonald that "the combination of pressure and fear would cause employees to leave the company or engage in improper practices in order to meet the performance goals." Baker, a former district manager in Houston, similarly averred that

> TitleMax's corporate headquarters emphasized marketing of auto title loans and heavily pressured employees to meet unachievable performance goals. For example, Mr. [Bielss] would hold monthly telephone conference calls with the district managers and regional

managers in Texas during which he would berate regional managers and district managers, even if they met performance metrics, in order to remind us that we were all expendable and numbers were king.

LoanStar also presented deposition excerpts from several employees who testified that TMX placed a great amount of pressure on its individual stores and employees to adopt marketing strategies geared toward increasing sales of title loans.

LoanStar presented evidence that Bielss was involved in the training program for new employees, that he occasionally sent marketing-related e-mails to TMX employees, and that he occasionally visited individual TitleMax stores in Texas.[5] One former employee testified that Bielss visited two different TitleMax stores at which the employee worked and had conversations about the practices that the store was utilizing to perform as well as it had been performing. The employee testified, "The sales were good, so [Bielss] just wanted to know what we were doing [marketing-wise] to get the sales to where they were." McDonald testified that she generally spoke with Bielss once per week and that their conversations involved "talking about the business, discussing the regional managers, their performance, their leadership opportunities. Sometimes it would be about opening markets, that we were opening stores and planning on staffing."

---

[5]     LoanStar's counsel asked several questions during the deposition of James Batterson, a former regional manager, concerning the alleged misconduct at issue as well as whether he had conversations regarding marketing practices and the propriety of marketing techniques and practices with Bielss. For each question, Batterson declined to answer pursuant to the Fifth Amendment.

McDonald also testified that in November 2011, she received a call from Bielss "saying that allegations were made, that [TMX employees] were—that an employee was going to a parking lot of a competitor."

TMX contends that LoanStar's evidence does "not show that Mr. Bielss was involved in marketing strategies at the store level, let alone stores marketing through allegedly unlawfully obtaining driving records, as alleged by LoanStar." It argues that the evidence does not show that Bielss has unique or superior personal knowledge "regarding the alleged use of driving records to allegedly market to LoanStar's customers." LoanStar argues that it noticed Bielss' deposition not because of his corporate position, but because he has personal knowledge of facts relevant to the claims and defenses in the underlying litigation. TMX has asserted that, if any improper conduct occurred, it was undertaken by isolated employees and not pursuant to a corporate policy that encouraged the use of improper searches to steal the customers of LoanStar and TMX's other competitors. LoanStar argues that due to the widespread use of the allegedly improper practices throughout distinct markets in Texas, Bielss, as the Senior Vice President of Operations, had, at the very least, knowledge of the use of the improper practices. It contends that Bielss' deposition is necessary because Bielss is "in a unique position to testify about the scope and spread of the illegal conduct in [TMX's] stores." We agree with LoanStar.

The apex deposition doctrine "does not provide automatic protection to all high-ranking corporate officers whose depositions have been noticed." *In re Titus Cnty.*, 412 S.W.3d at 35. The doctrine does not, for instance, protect corporate officials who have "first-hand knowledge of certain facts." *See Boales v. Brighton Builders, Inc.*, 29 S.W.3d 159, 168 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Here, LoanStar presented evidence that Bielss was actively involved in TMX's marketing efforts and operations in Texas, regularly holding conference calls concerning marketing and performance goals with regional and district managers and occasionally visiting individual stores in Texas to inquire about marketing practices. Bielss was the one who informed McDonald, Vice President of Operations for Texas, that LoanStar had made allegations of improper conduct against TMX.

We conclude that LoanStar has shown that Bielss arguably has "unique or superior personal knowledge of discoverable information." *See Crown Cent.*, 904 S.W.2d at 128; *see also In re Alcatel USA*, 11 S.W.3d at 179 (providing that individual has unique or superior personal knowledge if individual "arguably possesses relevant knowledge greater in quality or quantity than other available sources"). We hold that the trial court did not abuse its discretion in denying TMX's motion for protection concerning the deposition of Bielss and that

LoanStar is entitled to take Bielss' deposition. *See Crown Cent.*, 904 S.W.2d at 128; *In re Alcatel USA*, 11 S.W.3d at 176.

We overrule TMX's issue with respect to the deposition of Bielss.

## Conclusion

We conditionally grant TMX's petition for writ of mandamus in appellate cause number 01-14-00964-CV. We order the trial court to vacate its November 24, 2014 order denying TMX's motion for protection and compelling the deposition of Tracy Young. The writ will only issue if the trial court fails to do so. We deny TMX's petition for writ of mandamus in appellate cause number 01-15-00126-CV with respect to the deposition of Otto Bielss. We lift the stay entered on December 4, 2014, in appellate cause number 01-14-00964-CV and the stay entered on February 19, 2015, in appellate cause number 01-15-00126-CV.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Huddle, and Lloyd.

30