# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00693-CV

## In re CP Dreamworks Pizza, LLC

### ORIGINAL PROCEEDING FROM TRAVIS COUNTY

### M E M O R A N D U M   O P I N I O N

In this original proceeding, relator CP Dreamworks Pizza, LLC seeks mandamus relief from the trial court's order compelling the depositions of two high-level corporate officers. Dreamworks argues that the trial court abused its discretion when the court compelled Dreamworks to present its corporate president and vice president for deposition because the real parties in interest, Samantha Clem and Alyssa Cooper, failed to satisfy their burden for compelling an apex deposition. For the reasons explained below, we conditionally grant the petition for writ of mandamus. *See* Tex. R. App. P. 52.8(c).

### BACKGROUND

Dreamworks employed Makalia Kurtz as a pizza-delivery driver. On June 6, 2020, Kurtz drove out of the pizza-shop parking lot in her personal vehicle to begin a delivery and collided with a vehicle occupied by Clem and Cooper. Clem and Cooper, who claim they were injured in the accident, sued Kurtz and Dreamworks, alleging that Kurtz's negligent driving caused the accident. They also alleged that Dreamworks was vicariously liable for Kurtz's actions under

the doctrine of respondeat superior because she was a Dreamworks employee acting in the course and scope of her employment. Clem and Cooper further alleged that Dreamworks was independently liable for negligently training and supervising Kurtz.

During the discovery phase of the suit, Clem and Cooper sought depositions of Chris Pallagi, the sole shareholder and president of Dreamworks, and of Justin Dalton, vice president of Dreamworks. Dreamworks filed a motion for protection supported by the affidavits of Pallagi and Dalton, in which they attested that they had no knowledge of relevant facts and that being required to appear for a deposition would be unreasonably burdensome and expensive because it would require them to abandon and neglect their corporate duties for several days to prepare for and attend the deposition. In its motion, Dreamworks argued that as high-level corporate officers with no knowledge of relevant facts, Pallagi and Dalton were entitled to protection from deposition based on the apex-deposition doctrine, which applies when a party seeks to depose a corporate president or other high-level corporate official. *See generally Crown Cent. Petroleum Corp. v. Garcia*, 904 S.W.2d 125, 128 (Tex. 1995) (orig. proceeding). Dreamworks also filed a traditional motion for partial summary judgment, seeking summary judgment on Clem and Cooper's various direct causes of action against it for negligent training and supervision and on their claim for gross negligence. In the motion, Dreamworks argued that (1) it had no duty to train Kurtz because she was driving her own noncommercial vehicle and the delivery job required no special skill or knowledge beyond what it required of all licensed drivers and (2) it had no duty to supervise her because she had a valid, unrestricted driver's license.

In response, Clem and Cooper filed a motion to compel the depositions and a motion for continuance of Dreamworks' summary-judgment motion, arguing in the motion for continuance that the depositions were needed to respond to the summary-judgment motion. On

the day that the trial court conducted a nonevidentiary hearing on all three motions, it signed an order granting Clem and Cooper's motion for continuance.[1]  About six weeks later, in the absence of an order compelling the depositions, Dreamworks moved for a hearing on its summary-judgment motion because the deadline for hearing dispositive motions was only two weeks away.  The trial court subsequently signed an order compelling the depositions.[2]  This mandamus proceeding followed.

## STANDARD OF REVIEW

Mandamus relief is available only when the trial court has committed a clear abuse of discretion for which there is no adequate remedy by appeal.  *In re Alcatel USA, Inc.*, 11 S.W.3d 173, 175 (Tex. 2000) (orig. proceeding) (citing *Walker v. Packer*, 827 S.W.2d 833, 839-44 (Tex. 1992) (orig. proceeding)); *see In re Daisy Mfg. Co.*, 17 S.W.3d 654, 658 (Tex. 2000) (per curiam) (orig. proceeding).  With respect to resolution of factual issues or matters committed to the trial

---

[1]  As required by Texas Rule of Appellate Procedure 52.7(a)(2), Dreamworks advised the Court in its petition for writ of mandamus that no testimony was adduced in connection with the complained-of matter and also that no evidence was offered and admitted.  Dreamworks provided a mandamus record with the relevant briefing and evidence that was presented to the trial court in connection with its motion for protection, its summary-judgment motion, and Clem and Cooper's motions to compel and for continuance, as well as a supplemental record containing documents filed under seal.  Clem and Cooper submitted additional pleadings and documents in a mandamus record filed with their response.  Thus, we conclude there is no merit to Clem and Cooper's contention that Dreamworks failed to bring forth a sufficient mandamus record to establish that the trial court abused its discretion and thus failed to preserve error.  *See In re 24R, Inc.*, 324 S.W.3d 564, 568 (Tex. 2010) (orig. proceeding) (per curiam) (holding relator did not waive its right to mandamus relief by not filing transcript from trial-court proceedings because no testimony was necessary to decide issue presented by mandamus petition).

[2]  Clem and Cooper's motion also sought to compel the deposition of Pamela Vargas, who the motion asserted had been identified as the "general manager" in Dreamworks' discovery responses.  The trial court's order also granted the motion as to Vargas.  Dreamworks did not challenge this part of the order in its mandamus petition, and according to the parties, Vargas was deposed between the time that Dreamworks filed its petition and Clem and Cooper filed their response in this Court.  Clem and Cooper included Vargas's deposition transcript in their "Sworn Record Supporting Real Parties in Interest['s] Response to Petition for Writ of Mandamus."

court's discretion, the relator must establish that the trial court could reasonably have reached only one decision, and thus, its decision was arbitrary and unreasonable. *Walker*, 827 S.W.2d at 840. Our review of the trial court's determination of the legal principles controlling its ruling is much less deferential. *Id.* A trial court has no discretion in determining what the law is or in applying the law to the particular facts. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004) (orig. proceeding). A party may properly seek mandamus relief to determine whether the trial court correctly ordered an apex deposition. *See In re Alcatel USA*, 11 S.W.3d at 175; *In re Miscavige*, 436 S.W.3d 430, 435 (Tex. App.—Austin 2014, orig. proceeding) ("Mandamus relief is appropriate when a trial court allows an apex deposition to go forward in violation of the standard governing such discovery.").

## ANALYSIS

Dreamworks argues that the trial court abused its discretion by compelling Dreamworks to present Pallagi and Dalton for deposition because Clem and Cooper failed to satisfy their burden for compelling an apex deposition. We agree.

The Texas Supreme Court first addressed the propriety of apex depositions in *Crown Central* and set forth the guidelines that trial courts should follow when determining whether to allow them. 904 S.W.2d at 128. The *Crown Central* guidelines seek to strike a balance between a party's right to discovery "that is relevant to the subject matter of the claim, and which appears reasonably calculated to lead to the discovery of admissible evidence" and the right of a person whose deposition is noticed to protection "from undue burden, unnecessary expense, harassment or annoyance, or invasion of personal, constitutional, or property rights." *Id.* at 127 (quoting former Tex. R. Civ. P. 166b(5); *Monsanto Co. v. May,* 889 S.W.2d 274, 276 (Tex. 1994)

4

(orig. proceeding) (Gonzalez, J., dissenting)); *see also* Tex. R. Civ. P. 192.3 (scope of discovery), 192.6 (protective orders).

"An apex deposition is the deposition of a corporate officer at the apex of the corporate hierarchy." *AMR Corp. v. Enlow*, 926 S.W.2d 640, 642 (Tex. App.—Fort Worth 1996, orig. proceeding). When a party seeks to depose a corporate president or other high-level corporate official, and that official or the corporation files a motion for protective order to prohibit the deposition accompanied by an affidavit from the official denying any knowledge of relevant facts, the trial court must first determine whether the party seeking the deposition "has arguably shown that the official has any unique or superior personal knowledge of discoverable information." *Crown Cent.*, 904 S.W.2d at 128. A corporate official has "unique or superior personal knowledge" if the official is "the only person with personal knowledge of the information sought" or the official "arguably possesses relevant knowledge greater in quality or quantity than other available sources." *In re Alcatel USA*, 11 S.W.3d at 179.

If the party seeking the deposition cannot show that the corporate official has any unique or superior personal knowledge of discoverable information, the trial court should grant the motion for protection and first require the party seeking the deposition to "attempt to obtain the discovery through less intrusive methods." *Crown Cent.*, 904 S.W.2d at 128; *see In re Alcatel USA*, 11 S.W.3d at 176. Which "less intrusive methods" are appropriate depends on the circumstances of each case, but they "could include the depositions of lower-level employees, the deposition of the corporation itself, and interrogatories and requests for production of documents directed to the corporation." *Crown Cent.*, 904 S.W.2d at 128. When the party seeking an apex deposition has made a good-faith effort to obtain the discovery through less intrusive methods, that party may attempt to show that (1) there is a reasonable indication that the official's deposition

is calculated to lead to the discovery of admissible evidence and (2) the less intrusive methods of discovery are unsatisfactory, insufficient, or inadequate. *Id.* If the party seeking the deposition makes this showing, the trial court should modify or vacate the protective order. *Id.*; *In re Daisy Mfg.*, 17 S.W.3d at 658 ("Merely completing some less-intrusive discovery does not trigger an automatic right to depose the apex official."). If the party seeking the deposition does not make this showing, the trial court should leave the protective order in place. *Crown Cent.*, 904 S.W.2d at 128.

## I.      Unique or Superior Personal Knowledge of Discoverable Information

Dreamworks asserts that Clem and Cooper have not produced evidence showing that Pallagi and Dalton have either any unique knowledge or any superior personal knowledge of the relevant facts: the accident, Kurtz's hiring, or Kurtz's training. *See In re Alcatel*, 11 S.W.3d at 174 (holding that party seeking apex depositions "failed to present any evidence that arguably shows that the executives have unique or superior personal knowledge of discoverable information"). In Clem and Cooper's motion to compel the depositions of Pallagi and Dalton, although they alleged Pallagi and Dalton were Kurtz's "supervisors" who "have knowledge of unique relevant facts important to the case," Clem and Cooper did not specify what those alleged "unique relevant facts" were or what they pertained to, and they attached no evidence to their motion to compel. Similarly, in their response to Dreamworks' mandamus petition, Clem and Cooper assert—without providing any citations to the mandamus record in their response—that deposition testimony of Dreamworks' employees and representatives and Dreamworks' own discovery responses name Pallagi and Dalton "as persons with unique and superior knowledge over numerous relevant areas."[3] Clem and Cooper also contend (again without citation to the

---

[3] No discovery responses are included in either party's mandamus record.

record) that "[t]he material before this Court will show that the trial court acted within its discretion in permitting the depositions of Pallagi and Dalton to go forward because they possess unique or superior knowledge that is not held by any other lower level person in management."  At the time the trial court granted the motion to compel, Clem and Cooper had only deposed the Dreamworks driver Kurtz and the on-duty manager of the pizza shop, Noah Whalen, and their testimony does not support a conclusion that either Pallagi or Dalton has unique or superior knowledge of relevant facts.

First, with regard to Pallagi, Clem and Cooper assert that he, as Dreamworks' president, "is adequately equipped to answer questions regarding the training materials provided to the employees of the company," as evidenced by the fact that he is the individual answering the interrogatories propounded by them on Dreamworks.  As for Dalton, Clem and Cooper argue that his deposition is not governed by the apex-deposition doctrine because at the time of the accident he was a district manager, not vice president, and because "testimony produced in the underlying case show[s] that he had material input in the training and supervision of his employees."  Clem and Cooper point to no evidence in the mandamus record, and we have found none, to support that either Pallagi or Dalton were involved in the training and supervision of any store employees or delivery drivers in general or of Kurtz in particular.  Having reviewed the mandamus record, we conclude that Clem and Cooper's conclusory allegations are unsupported by evidence and do not suffice to demonstrate that either Pallagi or Dalton have unique or superior personal knowledge of discoverable information.  As the Texas Supreme Court pointed out in *In re Alcatel*, "[a]llowing apex depositions merely because a high-level corporate official possesses apex-level knowledge would eviscerate the very guidelines established in *Crown Central*."  *Id.* at 177.

In this case, Clem and Cooper have not adequately explained what discoverable information Pallagi and Dalton may have, other than knowledge of the training and supervision of Dreamworks employees. "Testimony that a corporate executive possesses knowledge of company policies does not, by itself, satisfy the first *Crown Central* test because it does not show that the executive has unique or superior knowledge of discoverable information." *Id.* (citing *In re El Paso Healthcare Sys.*, 969 S.W.2d 68, 74 (Tex. App.—El Paso 1998, orig. proceeding) ("A generalized claim that a corporate president has ultimate responsibility for all corporate decisions or has knowledge of corporate policy is insufficient to establish that the corporate president has unique or superior personal knowledge of discoverable information."); *AMR Corp.*, 926 S.W.2d at 644). At most, Clem and Cooper's allegations amount to allegations that Pallagi and Dalton have knowledge of company policies about training and supervision of Dreamworks employees. Nothing they have alleged and nothing in the record before us supports a conclusion that either official has unique knowledge about the relevant corporate policies or superior personal knowledge about the policies or the relevant facts underlying this case. *See, e.g.*, *In re TMX Fin. of Tex., Inc.*, 472 S.W.3d 864, 877 (Tex. App.—Houston [1st Dist.] 2015, orig. proceeding) ("Merely having some knowledge of the subject matter of a dispute is not enough to compel an apex deposition."); *see also id.* at 873-79 (concluding that corporate official who lacked first-hand personal knowledge of relevant facts was protected by apex-deposition doctrine when plaintiff presented no evidence that official was involved in relevant events or meetings but also concluding that another corporate official was not protected by doctrine because plaintiff presented evidence that second official had unique knowledge of marketing practices at issue).

We also disagree with Clem and Cooper's assertion that the apex-deposition doctrine does not apply to Dalton because he was a district manager instead of vice president. As

an initial matter, Clem and Cooper do not point to any evidence in the record that establishes Dalton's corporate role at the time of the accident or the corporate hierarchy of Dreamworks. Moreover, nothing in *Crown Central* establishes the precise parameters of what corporate positions are protected by the apex-deposition doctrine—instead, the doctrine allows any "high level corporate official" who lacks personal knowledge of relevant facts to seek protection from a deposition. 904 S.W.2d at 128. Thus, the doctrine is not limited to particular titles or positions, which may vary among different corporate structures. However, we need not decide whether Dalton would be entitled to protection under the apex-deposition doctrine based on his alleged role as a district manager at the time of the accident. Dreamworks established in its motion and Dalton's affidavit that Dalton was vice president at the time Clem and Cooper requested his deposition. The apex-deposition doctrine is intended to strike a balance between protecting a corporate party from undue burden and harassment and providing a party with access to relevant discovery. *See id.* at 127. Thus, while a corporate official's role at the time of the events that lead to the underlying suit may have some bearing on whether that official has unique or superior personal knowledge of relevant facts, we conclude under the circumstances present here that it is Dalton's corporate role at the time that the deposition was sought that governs the applicability of the doctrine.

Based on our review of the mandamus record, we conclude that the trial court erred to the extent that it concluded that Clem and Cooper established that Pellagi and Dalton have unique or superior personal knowledge of discoverable information. *See In re Alcatel*, 11 S.W.3d at 177 (concluding that allegation that at most tends to show that corporate official may possess discoverable information is not sufficient to show that official's knowledge is unique or superior).

## II.    Less Intrusive Measures

Dreamworks also contends that the trial court erred by granting Clem and Cooper's motion to compel Pallagi's and Dalton's depositions because Clem and Cooper did not show that they had made a good-faith effort to obtain the discovery through less intrusive measures. *See Crown Cent.*, 904 S.W.2d at 128; *see also In re Alcatel*, 11 S.W.3d at 176 (concluding that trial court may consider both prongs of *Crown Central* guidelines when parties have already undertaken extensive discovery and court has sufficient information to consider both prongs).  Whalen, who was the on-duty manager at the time of the accident, was the only lower-level manager whose deposition testimony was before the trial court at the time it granted the motion to compel.  Whalen testified that he acted in the role of a floating assistant manager at the time of the accident, but he was not assigned to a particular store and did not have a title at the time.  He also testified that he did not have any responsibilities for training the drivers for safe driving.  Whalen testified that he was present at the store location when the accident happened, but he only saw the aftermath of the accident, not the accident itself, and that he had not been involved in hiring or training Kurtz.  Whalen was not asked about Dreamworks' corporate policies concerning driver training.

Clem and Cooper contend that we should also consider Vargas's deposition testimony in support of their argument that less intrusive means of discovery are unsatisfactory, insufficient, or inadequate.  Assuming for the sake of argument that we could consider testimony that was not before the trial court at the time it granted the motion to compel, we disagree with Clem and Cooper's contention that Vargas's testimony supports a conclusion that Pallagi and Dalton have unique or superior personal knowledge of relevant facts that is not available through less intrusive means.  At the time of the accident, Vargas was the general manager who had hired Kurtz as a driver.  (Whalen testified that a "general manager" for Dreamworks meant the manager

10

of a particular location.) By the time of her deposition, Vargas had been promoted to district manager; she testified that she supervises four stores in that role. In her deposition testimony, Vargas indicated that she did not remember the specifics of the training provided to drivers or what her responsibilities were as a general manager or as a district manager in connection with that training. She also testified that she did not recall any of the specifics of training Kurtz.[4]

Clem and Cooper assert that because Vargas and Whalen testified that they had no "knowledge of the training and supervision [of] employees of Dreamworks," Pallagi and Dalton have unique and superior knowledge that goes beyond the knowledge of lower-level managers about that training and supervision. We disagree with that assertion. Nothing in the record indicates that Clem and Cooper have sought the deposition of a corporate representative to the extent they seek discovery on Dreamworks' corporate policies concerning supervision and training. *See, e.g.*, *In re American Airlines, Inc.*, 634 S.W.3d 38, 41-42 (Tex. 2021) ("A discovering party's discovery efforts must be reasonable, and if they are not, '*Crown Central*'s standards have not been met.'" (quoting *In re Daisy Mfg.*, 17 S.W.3d at 659)); s*ee also* Tex. R. Civ. P. 199.2(b)(1). The fact that two fact witnesses cannot recall details about the hiring and training of Kurtz does not logically support the conclusion that Pallagi or Dalton would possess unique or superior personal knowledge of those facts when there is no evidence that they were involved with the hiring and training of Kurtz. Likewise, the two fact witnesses' lack of knowledge about the details of corporate policies does not logically support the conclusion that Pallagi or Dalton has unique or superior personal knowledge of those policies that a lower-level corporate representative could not also provide. Moreover, on this record, the trial court could not have concluded that Clem and Cooper demonstrated that they made a good-faith effort to gather

---

[4] Kurtz testified in her deposition that Vargas had interviewed her and inspected her vehicle.

information about Pallagi's and Dalton's alleged roles and knowledge of the training and supervision policies through written discovery. Therefore, we hold that the trial court abused its discretion to the extent that it concluded Clem and Cooper established that they had attempted to obtain the information through less intrusive methods or that it was unobtainable from other sources. *See In re Alcatel*, 11 S.W.3d at 180.

## CONCLUSION

We conclude that the trial court lacked discretion to compel the depositions of Pallagi and Dalton because Clem and Cooper did not establish either (1) that Pallagi and Dalton had unique or superior personal knowledge or (2) that Clem and Cooper had attempted to obtain the information through less intrusive methods. *See id.* In addition, no adequate remedy by appeal exists because an appellate court could not cure the trial court's error in ordering the apex depositions. *See In re American Airlines*, 634 S.W.3d at 43; *AMR Corp.*, 926 S.W.2d at 644. Accordingly, we conditionally grant Pallagi and Dalton's petition for writ of mandamus. The writ will issue only if the trial court fails to vacate its September 8, 2022 order compelling Pallagi and Dalton to appear for deposition.

_____

Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Triana and Theofanis

Filed: January 26, 2023

12